# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

FLAGSTAR BANK, FSB, a Federally
Chartered Savings Bank,

      Plaintiff,

v.

MICHAEL C. HILD, an individual,

      Defendant.

Case No._____

Honorable _____

**COMPLAINT**

_____/

BODMAN PLC
By:   Joseph J. Shannon (P38041)
       Jane Quasarano (P45514)
       Serena G. Rabie (P81951)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, MI 48226
Attorneys for Plaintiff
jshannon@bodmanlaw.com
jquasarano@bodmanlaw.com
srabie@bodmanlaw.com

_____/

## COMPLAINT

## THE PARTIES, JURISDICTION AND VENUE

Plaintiff Flagstar Bank, FSB ("Flagstar") complains against defendant Michael C. Hild ("Guarantor") as follows:

1. Flagstar is a federally chartered savings bank organized under the laws of the United States, with its principal place of business at 5151 Corporate Drive, Troy, Michigan 48098.

2. On information and belief, defendant Michel C. Hild is an individual who resides in Richmond, Virginia.

3. The amount in controversy in this matter is in excess of $75,000.

4. This Court has jurisdiction under 28 U.S.C. §1332 and 12 U.S.C §1464(x).

5. Venue is proper before this Court under 28 U.S.C. §1391.

## COMMON ALLEGATIONS

6. On or around November 2, 2016, non-party Live Well Financial, Inc. ("Live Well") executed and delivered to Flagstar a Mortgage Warehousing Loan and Security Agreement (as subsequently amended and restated)(the "Mortgage Warehouse Loan Agreement") and a Revolving Credit Note (as subsequently amended and restated)(the "Mortgage Warehouse Note") under which Live Well promised to pay Flagstar the sum of $30,000,000.

7.     Under the Mortgage Warehouse Loan Agreement Flagstar has a valid first-priority properly perfected security interest in personal property including the following: all Pledged Mortgage Loans, including all related Mortgage Notes, Mortgages, promissory notes, mortgages, deeds of trust, deeds to secure real estate, assignments of leases and rents, other security agreements given to secure such Mortgage Loans, and all other documents, agreements, or instruments related to any such Mortgage Loans or the property given as security for any such Mortgage Loans, all rights to payment thereunder, all insurance contracts or guaranty rights with respect to any such Mortgage Loans or the real property securing any such Mortgage Loans including, without limitation, mortgage and title insurance policies, binders and commitments and fire and extended coverage insurance policies (including the right to any return premiums).

8.     A copy of the most recent Mortgage Warehouse Loan Agreement and amendments is attached as Tab 1.  A copy of the most recent Mortgage Warehouse Note is attached as Tab 2.  As of May 10, 2019, the principal amount owed on the Mortgage Warehouse Note was $13,248,326.18 and the interest is $30,591.51 (exclusive of interest, costs and expenses accruing after May 9, 2019 which are also immediately due to Flagstar)(the "Mortgage Warehouse Obligations").

9.     On or about March 29, 2017, Live Well executed and delivered to Flagstar a Loan and Security Agreement (as subsequently amended)(the "Bond-

Secured Credit Loan Agreement") and a Revolving Credit Note (as subsequently amended)(the "Bond-Secured Credit Facility Note") under which Live Well promised to pay Flagstar the sum of $50,000,000.00 (subsequently amended to $70,000,000).

10. A copy of the Bond-Secured Credit Loan Agreement and amendments is attached as Tab 3. The Mortgage Warehouse Agreement and the Bond-Secured Credit Loan Agreement shall be collectively referred to as the Loan Agreements. A copy of the Bond-Secured Credit Facility Note and amendments is attached as Tab 4. The Bond-Secured Credit Facility Note and the Mortgage Warehouse Note shall be collectively referred to as the "Notes".

11. Under the Bond-Secured Credit Loan Agreement Flagstar has a valid first-priority properly perfected security interest in a securities account at U.S. Bank National Association and all financial assets and other property held in the account.

12. As of May 10, 2019 the principal amount owed on the Bond-Secured Credit Note is $69,094,299.87 and the interest is $76,166.58 (exclusive of interest, costs and expenses accruing after May 9, 2019 which are also immediately due to Flagstar)(the "Bond-Secured Credit Obligations"). The Mortgage Warehouse Obligations and the Bond-Secured Credit Obligations shall be collectively referred to as the "Obligations".

13. On or around November 2, 2016 Guarantor executed and delivered to Flagstar a Continuing Guaranty of Payment (the "Guaranty") guaranteeing payment of "all indebtedness obligations, and liabilities of [Live Well] to Flagstar (i) whether now existing or subsequently arising (under the [Mortgage Warehouse Loan] Agreement or pursuant to any other agreement)….". A copy of the Guaranty is attached as Tab 5.

14. All documents, instruments and agreements executed in connection with the financing arrangements from Flagstar to Live Well and Guarantor are identified collectively as the "Loan Documents."

15. Live Well is in default under the terms of the Bond-Secured Credit Loan Agreement, the Mortgage Warehouse Agreement and the Loan Documents.

16. On May 3, 2019, Flagstar sent notice to Live Well and Guarantor stating that "one or more Events of Default exist under the Loan Documents because Borrower has commenced a liquidation of its business, which is likely to have a Material Adverse Effect." Other defaults may exist.

17. On May 10, 2019 Flagstar accelerated and demanded payment in full of the Obligations. Flagstar also informed Live Well and Guarantor that interest would now accrue at the default rates under the Loan Documents. A copy of the demand is attached as Tab 6.

18. Despite demand, Live Well and Guarantor have failed to repay the Obligations.

## COUNT I
## BREACH OF GUARANTY

19. Flagstar incorporates paragraphs 1 through 18 of its complaint as if set forth here fully.

20. This is an action to enforce the Guaranty.

21. The Obligations have been accelerated as a result of the defaults listed above.

22. Guarantor unconditionally guaranteed payment of some or all of the Obligations to Flagstar.

23. Demand was made on Guarantor and Guarantor has failed to make payment.

24. Flagstar has fulfilled its obligations under the Guaranty and the Loan Documents.

25. Guarantor is in default under the Guaranty.

26. Flagstar has been damaged by Guarantor's breach and Flagstar is entitled to a judgment for the outstanding Obligations.

WHEREFORE, Flagstar requests that the Court enter a judgment in favor of Flagstar and against Guarantor for the amount due and owing to Flagstar including, but not limited to, principal, interest (pre and post complaint), reasonable attorneys' fees and costs in this action and other costs and fees as provided for under the Loan Agreements.

> Respectfully submitted,
>
> BODMAN PLC
>
> By: /s/ Joseph J. Shannon (P38041)
>     Joseph J. Shannon (P38041)
>     Jane Quasarano (P45514)
>     Serena G. Rabie (P81951)
> 6th Floor at Ford Field
> 1901 St. Antoine Street
> Detroit, MI 48226
> Attorneys for Plaintiff
> jshannon@bodmanlaw.com
> jquasarano@bodmanlaw.com
> srabie@bodmanlaw.com

May 22, 2019