# TAB 4



## REVOLVING CREDIT NOTE

$50,000,000.00                                                         March 29, 2017

FOR VALUE RECEIVED, **LIVE WELL FINANCIAL, INC.,** a Delaware corporation (the "***Borrower***"), hereby promises to pay to **FLAGSTAR BANK, FSB**, a federally chartered savings bank (together with its successors and assigns, the "***Lender***"), on March 29, 2022 (the "Revolving Loan Maturity Date"), the principal amount of Fifty Million and 00/100 Dollars ($50,000,000.00) (or so much of such sum as has been advanced by Lender to Borrower and is outstanding under this Note), together with interest on the unpaid principal until paid at the rates per annum set forth below.

### The Loan Agreement

This Revolving Credit Note (this "***Note***") is the Revolving Note described in that certain Loan and Security Agreement of even date herewith between the Lender and the Borrower (as amended, restated, or otherwise superseded from time to time, the "***Loan Agreement***").  Capitalized terms used but not otherwise defined in this Note shall have the meanings given them in the Loan Agreement.  This Note is issued pursuant to, entitled to the benefit of, and secured by the liens and security interests described in, the Loan Agreement and the other Loan Documents, but the foregoing reference to the Loan Agreement and the other Loan Documents shall not affect or impair the absolute and unconditional obligation of the Borrower to pay all amounts evidenced by this Note in accordance with its terms.

### Interest

Amounts outstanding under this Note will (except to the extent specifically provided to the contrary) bear interest at a rate per annum equal to the Applicable Interest Rate.

The following terms shall have the respective meanings attributed to them:

"***Applicable Interest Rate***" means the sum of LIBOR in effect on each Reset Date plus the Applicable Margin.

"***Applicable Margin***" means, with respect to any Advance, two and five tenths percent (2.5%).

"***LIBOR***" means, for each Reset Date, the interest rate per annum determined by the Lender by dividing (i) the rate that appears as the ICE Benchmark Administration LIBOR Rate for United States Dollar deposits (as quoted by Bloomberg Finance L.P.) offered by leading banks in the London interbank deposit market, at approximately 11:00 a.m., London time, on the Business Day immediately preceding the Reset Date, as the one (1) month London interbank offered rate for U.S. Dollars commencing on such Business Day (or if, for any reason, such source for rate information no longer exists, a comparable replacement rate determined by the Lender at such time), by (ii) a number equal to 1.00 minus the LIBOR Reserve Percentage.

"***LIBOR Reserve Percentage***" means the maximum effective percentage in effect on such day as prescribed by the Board of Governors of the Federal Reserve System (or any successor) for determining

13392421_3

the reserve requirements (including, without limitation, supplemental, marginal and emergency reserve requirements) with respect to eurocurrency funding (currently referred to as "Eurocurrency liabilities").

*"Reset Date"* shall mean (i) the date of this Note, and (ii) the first (1st) day of each month thereafter, provided that if any such day is not a Business Day, then the first succeeding day that is a Business Day shall instead apply.

The following provisions shall also apply to the principal from time to time evidenced by this Note:

(a)     LIBOR shall be adjusted on and as of (1) each Reset Date, and (2) the effective date of any change in the LIBOR Reserve Percentage;

(b)     LIBOR may be deemed by the Lender (in the Lender's sole discretion) to be unavailable if a Default or Event of Default occurs or if the Lender determines that (i) no adequate basis exists for determining LIBOR, (ii) adverse or unusual conditions in or changes in applicable law or the London interbank eurodollar market make it illegal or, in the reasonable judgment of the Lender, impossible to fund loans at LIBOR or make LIBOR unreflective of the actual costs of funds to the Lender, or (iii) it has become unlawful for the Lender to charge interest on Loans by reference to LIBOR; and

(c)     If LIBOR is deemed by the Lender to be unavailable, then the Lender shall so notify the Borrower, and the Applicable Interest Rate hereunder shall thereafter be a rate of interest per annum equal to a rate comparable to the then Applicable Interest Rate as determined by Lender in its sole discretion (and shall continue to be so until LIBOR is deemed available by the Lender).

(d)     If at any time LIBOR is less than zero, such rate shall be deemed to be zero for purposes of this Note.

**Interest Computations**

Interest due with respect to this Note shall be computed on the basis of a year of 360 days and paid for the actual number of days elapsed.  If the due date for any payment required under this Note is extended by operation of law, interest shall be payable for such extended time.  If any payment required under this Note is due on a day that is not a Business Day, such payment may be made on the next succeeding Business Day.

**Principal and Interest Payments**

On the Revolving Loan Maturity Date, the Borrower shall repay all Obligations then outstanding with respect to the Advances, including, without limitation, the outstanding principal balance of this Revolving Note, all interest accrued thereon, and all fees, charges, costs and expenses payable to the Lender pursuant to the Loan Agreement.

Interest shall be due and payable on the first Business Day of each month and on the Revolving Loan Maturity Date.

13392421_3

**Acceleration; Default Interest and Late Charges**

Upon the occurrence of an Event of Default, (a) the Lender may declare the aggregate unpaid balance of principal of this Note, plus all accrued interest and all other unpaid Obligations to be immediately due and payable, and (b) all Obligations evidenced by this Note shall bear interest at the Default Rate.  In addition, if any payment required under this Note is not paid in full within ten (10) days after its due date, the Borrower shall pay to the Lender, on demand, a late payment charge equal to five percent (5%) of the overdue payment.

**Application of Payments**

Any payments received by the Lender with respect to this Note prior to the occurrence of an Event of Default shall be applied first to any costs, expenses, or fees due to the Lender, second to any accrued interest, and third to the unpaid principal.  Any payments received after the occurrence of an Event of Default shall be applied to the Obligations in such a manner as Lender shall determine.

**Place for Payments**

All payments under this Note shall be made at the office of the Lender at the address set forth on the signature page of this Note (or at such other place as the Lender may designate from time to time in writing) in lawful money of the United States of America in federal or other immediately available funds.

**Waivers by the Borrower**

The Borrower waives presentment, demand, notice of dishonor, protest and all other demands and notices (except as provided in or required by the Loan Agreement) in connection with the delivery, acceptance, performance and enforcement of this Note.  The Borrower's liability hereunder shall remain unimpaired notwithstanding (i) any extension of the time for payment or other indulgence granted by the Lender, (ii) the release of all or any part of the security granted to the Lender or the liability (or release of liability) of any party that may assume or otherwise be liable for the payment of the indebtedness evidenced by this Note, or (iii) the performance of the Obligations of the Borrower under any of the other Loan Documents.

**Business Purposes**

The Borrower represents to the Lender that the proceeds of this Note will be used solely for business purposes and shall not be used for personal, family, or household purposes.

**Note as Loan Document**

This Note constitutes a Loan Document as defined in the Loan Agreement and shall be governed by the provisions of the Loan Agreement pertaining to setoff, governing law, and jurisdiction and forum.

**WAIVER OF JURY TRIAL, SERVICE OF PROCESS AND DAMAGES**

**THE BORROWER AND, BY ITS ACCEPTANCE OF THIS NOTE, LENDER, EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY CLAIM BASED ON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR THE OTHER LOAN DOCUMENTS OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE BORROWER OR THE LENDER,**

- 3 -

- 4 -

INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF THE LENDER RELATING TO THE ADMINISTRATION OF THE REVOLVING LOAN OR ENFORCEMENT OF THIS NOTE OR THE OTHER LOAN DOCUMENTS.  THE BORROWER HEREBY AGREES IT SHALL NOT SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY CANNOT BE OR HAS NOT BEEN WAIVED.

EXCEPT AS PROHIBITED BY LAW, THE BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.

THE BORROWER CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS AND AGREEMENTS, EACH OF WHICH CONSTITUTE A MATERIAL INDUCEMENT FOR THE LENDER TO ACCEPT THIS NOTE AND THE OTHER LOAN DOCUMENTS AND TO MAKE THE REVOLVING LOAN.

*[Remainder of Page Intentionally Left Blank; Signature Page Follows]*

13392421_3

IN WITNESS WHEREOF, the Borrower has executed this Note as of the date first above written.

BORROWER:

**LIVE WELL FINANCIAL, INC.,** a Delaware corporation

By: _Michael C Hild_

Print Name: _Michael C. Hild_

Title: _Chairman & CEO_

Address for Payments:

Flagstar Bank, FSB

Commercial Lending Services
Flagstar Bank
5151 Corporate Drive
Troy MI 48098
Mail Code E 203 3

**EXECUTION VERSION**

## AMENDMENT NO. 1 TO LOAN AND SECURITY AGREEMENT
## AND
## AMENDMENT NO. 1 TO REVOLVING NOTE

This Amendment No. 1 to Loan and Security Agreement and Amendment No. 1 to Revolving Note, dated as of October 26TH, 2017 (this "*Amendment*"), is entered into by and between Live Well Financial, Inc., a Delaware corporation ("*Borrower*"), and Flagstar Bank, FSB ("*Lender*"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Loan Agreement (as defined below).

## RECITALS

A.      Borrower and Lender are parties to that certain Loan and Security Agreement dated as of March 29, 2017, (as amended, restated, supplemented, or otherwise modified from time to time, the "*Loan Agreement*").

B.      In connection with the Loan Agreement, Borrower executed in favor of Lender a Revolving Credit Note dated as of March 29, 2017, in the principal amount of $50,000,000.00 (as amended, restated, supplemented, or otherwise modified from time to time, the "*Revolving Note*").

C.      Borrower and Lender wish to amend the Loan Agreement and the Revolving Note as provided in this Amendment.

**THEREFORE**, in consideration of the Recitals and other valuable consideration, the receipt and sufficiency of which is acknowledged, the parties agree as follows.

**Section 1.      Amendment to Loan Agreement**.

(a)      Section 1.1 of the Loan Agreement is amended by amending and restating, in its entirety, the following definition.

"Revolving Loan Maximum Amount" means Seventy Million and 00/100 Dollars ($70,000,000.00).

**Section 2.      Amendments to Revolving Note**. The Revolving Note is amended as follows.

(a)      The heading of the first page of the Revolving Note is amended by replacing "$50,000,000.00" with "$70,000,000.00."

(b)      The introductory paragraph on the first page of the Revolving Note is amended by deleting the phrase "the principal amount of Fifty Million and 00/100 Dollars ($50,000,000.00) (or so much of such sum as has been advanced by Lender to Borrower and is outstanding under this Note)" with the phrase "the principal amount of Seventy Million and 00/100 dollars

($70,000,000.00) (or so much of such sum as has been advanced by Lender to Borrower and is outstanding under this Note)".

> **Section 3.**     **Fees and Expenses**.   Borrower hereby agree to pay to Lender, on demand, any and all reasonable out-of-pocket fees, costs and expenses (including reasonable fees and expenses of counsel) incurred by Lender in connection with the development, preparation and execution of this Amendment.

> **Section 4.**     **Conditions Precedent**.   This Amendment shall become effective as of the date hereof upon (a) each party's receipt of this Amendment, executed and delivered by a duly authorized officer of each of the other parties hereto and (b) Lender's receipt of a non-refundable amendment fee of $200,000.00.

> **Section 5.**     **Limited Effect**.   Except as expressly amended and modified by this Amendment, each of the Existing Loan Agreement and the Existing Revolving Note shall continue to be, and shall remain, in full force and effect in accordance with its respective terms.

> **Section 6.**     **Counterparts**.   This Amendment may be executed by each of the parties hereto on any number of separate counterparts, each of which shall be an original and all of which taken together shall constitute one and the same instrument.

> **Section 7.**     **Severability**.   Each provision and agreement herein shall be treated as separate and independent from any other provision or agreement herein and shall be enforceable notwithstanding the unenforceability of any such other provision or agreement.

> **Section 8.**     **GOVERNING LAW.   THE AMENDMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).**

[Signature Page Follows]

**IN WITNESS WHEREOF**, the parties have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

LIVE WELL FINANCIAL, INC.

By: _Michael C Hild_____
     (Signature)

Its: _____
     Michael E. Hild, Chairman and CEO

FLAGSTAR BANK, FSB

By: _____
     (Signature)

Its: _____
     (Printed Name and Title)

**IN WITNESS WHEREOF**, the parties have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

LIVE WELL FINANCIAL, INC.

By:_____
      (Signature)

Its:_____
      Michael E. Hild, Chairman and CEO

FLAGSTAR BANK, FSB

By:_____
      (Signature)

Its:___Kelly M. Hanrick, First Vice President_____
      (Printed Name and Title)

WAIVER, AMENDMENT NO. 2 TO LOAN AND SECURITY AGREEMENT, AND
AMENDMENT NO. 2 TO REVOLVING NOTE

This **Waiver, Amendment No. 2 to Loan and Security Agreement, and Amendment
No. 2 to Revolving Note** (this "***Waiver and Amendment***") is made as of February 11, 2019 by
and between Live Well Financial, Inc., a Delaware corporation (the "***Borrower***") and Flagstar
Bank, FSB, a federal savings bank (the "***Lender***").

## RECITALS

A.     The Borrower and the Lender are parties to that certain Loan and Security
Agreement dated as of March 29, 2017, (as amended, restated, supplemented, or otherwise
modified from time to time, the "***Loan Agreement***") under which the Lender agreed to extend
credit to the Borrower as set forth therein.

B.     In connection with the Loan Agreement, the Borrower executed in favor of the
Lender a Revolving Credit Note dated as of March 29, 2017 (as amended, restated,
supplemented, or otherwise modified from time to time, the "***Revolving Note***"), in a current
maximum principal amount of $70,000,000.

C.     The Borrower has informed the Lender that it will not be in compliance with the
Net Income covenant in the definition of "Financial Covenants" and Section 8.7 of the  Loan
Agreement as of December 31, 2018 and has requested that the Lender waive any Default or
Event of Default arising from that lack of compliance. The Lender is willing to provide such a
waiver but only on the terms and conditions set forth in this Waiver and Amendment.

D.     The Borrower and the Lender wish to amend the Loan Agreement and the
Revolving Note as provided in this Waiver and Amendment.

THEREFORE, in consideration of the Recitals and other valuable consideration, the
receipt and sufficiency of which are acknowledged, the Borrower and the Lender agree as
follows:

1.     **Amendment to Loan Agreement**.

(a)     Section 1.1 of the Loan Agreement is amended by amending and restating
the definition of "Revolving Loan Maturity Date" as follows;

> "Revolving Loan Maturity Date" means May 1, 2019, subject to
> acceleration of repayment of the Obligations pursuant to this
> Agreement.

(b)     Section 2.1 of the Loan Agreement is amended by adding the following at
the end of that Section:

Notwithstanding the foregoing, on and after February 11, 2019, (i) no further borrowings will be permitted under the Revolving Loan and (ii) at any time the aggregate principal amount of all outstanding Revolving Loan advances then outstanding exceeds the lesser of (x) the Revolving Loan Maximum Amount and (y) the Borrowing Base, the Borrower must prepay the principal balance of the Revolving Loan in an amount equal to such excess upon demand therefor from the Lender.  In addition, the Borrower may not substitute Ginnie Mae Bond Collateral without the Lender's consent.

      (c)     Section 2.2 of the Loan Agreement is amended by deleting the second sentence thereof.

      (d)     Section 8.7 of the Loan Agreement is amended by adding the following sentence at the end of the Section:

Notwithstanding the foregoing, or any other provision of the Loan Agreement, the Financial Covenants will not be tested as of December 31, 2018 or March 31, 2019.

      2.     **Amendment to Revolving Note**.  The Revolving Note is amended by changing the "Revolving Loan Maturity Date" to May 1, 2019.

      3.     **Waiver**. The Lender waives any Default or Event of Default arising from Borrower's failure to comply with the Net Income covenant in the definition of "Financial Covenants" and Section 8.7 of the Loan Agreement as of December 31, 2018.

      4.     **Effectiveness**. This Waiver and Amendment shall become effective (the "Waiver and Amendment Effective Date") upon Lender's receipt of counterparts of (a) this Waiver and Amendment, duly executed and delivered by the Borrower and the Lender and (b) a covenant waiver fee of $105,000.

      5.     **Representations and Warranties**. The Borrower hereby represents and warrants that, after giving effect to this Waiver and Amendment (a) execution and delivery of this Waiver and Amendment, and the performance by the Borrower of its obligations under the Loan Agreement as amended hereby (herein, as so amended, the "Amended Loan Agreement") are within the Borrower's corporate powers, have been duly authorized, are not in contravention of applicable law or the terms of its certificate of incorporation, bylaws,  or other organizational documents of the Borrower and except as have been previously obtained do not require the consent or approval, material to the amendments contemplated in this Waiver and Amendment or the Amended Loan Agreement, of any governmental body, agency or authority, and this Waiver and Amendment and the Amended Loan Agreement, will constitute the legal, valid and binding obligations of the Borrower enforceable in accordance with their terms, except as enforcement thereof may be limited by applicable bankruptcy, reorganization, insolvency, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (whether enforcement is sought in a proceeding in equity or at law), (b) the representations and warranties set forth in the Amended Loan Agreement are true and correct on

Detroit_15914992_5

and as of the date hereof, and (c) no Default or Event of Default has occurred and is continuing as of the Waiver and Amendment Effective Date.

6.    **Continuing Effect**. Except as specifically set forth above, this Waiver and Amendment shall not be deemed to amend or alter in any respect the terms and conditions of the Loan Agreement (including without limitation all financial covenants), the Note issued thereunder or any of the other Loan Documents, or to constitute a waiver or release by the Lender of any right, remedy, Default or Event of Default under or a consent to any transaction not meeting the terms and conditions of the Loan Agreement, the Note issued thereunder or any of the other Loan Documents.

7.    **Definitions**. Unless otherwise defined to the contrary herein, all capitalized terms used in this Waiver and Amendment shall have the meaning set forth in the Loan Agreement.

8.    **Counterparts**. This Waiver and Amendment may be executed in counterparts.

9.    **Choice of Law**. This Waiver and Amendment shall be governed by and construed in accordance with and governed by the laws of the State of Michigan.

**[SIGNATURES BEGIN ON FOLLOWING PAGE]**

3

WITNESS the due execution hereof as of the day and year first above written.

**LENDER:**                                    **BORROWER:**

**FLAGSTAR BANK, FSB**                         **LIVE WELL FINANCIAL, INC.**

By:_____                    By:_____
John Antonczak, Senior Vice President           Name:
                                                Title:

[Signature Page to Waiver and Amendment (15914992)]

WITNESS the due execution hereof as of the day and year first above written.

**LENDER:**                                      **BORROWER:**

**FLAGSTAR BANK, FSB**                           **LIVE WELL FINANCIAL, INC.**

By:_____              By:_____
                                                 Name: Glen Haddock
Its:_____              Title: Chief Financial Officer

[Signature Page to Waiver and Amendment (15914992)]

AMENDMENT NO. 3 TO LOAN AND SECURITY AGREEMENT, AND
AMENDMENT NO. 3 TO REVOLVING NOTE

This **Amendment No. 3 to Loan and Security Agreement, and Amendment No. 3 to Revolving Note** (this "*Amendment*") is made as of April◊◊, 2019 by and between Live Well Financial, Inc., a Delaware corporation (the "*Borrower*") and Flagstar Bank, FSB, a federal savings bank (the "*Lender*").

## RECITALS

A.      The Borrower and the Lender are parties to that certain Loan and Security Agreement dated as of March 29, 2017, (as amended, restated, supplemented, or otherwise modified from time to time, the "*Loan Agreement*") under which the Lender agreed to extend credit to the Borrower as set forth therein.

B.      In connection with the Loan Agreement, the Borrower executed in favor of the Lender a Revolving Credit Note dated as of March 29, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "*Revolving Note*"), in a current maximum principal amount of $69,094,299.87.

C.      The Borrower and the Lender wish to amend the Loan Agreement and the Revolving Note as provided in this Amendment.

THEREFORE, in consideration of the Recitals and other valuable consideration, the receipt and sufficiency of which are acknowledged, the Borrower and the Lender agree as follows:

1.      **Amendment to Loan Agreement**.

(a)      Section 1.1 of the Loan Agreement is amended by amending and restating the definition of "Revolving Loan Maturity Date" as follows;

> "Revolving Loan Maturity Date" means June 1, 2020, subject to acceleration of repayment of the Obligations pursuant to this Agreement.

(b)      Section 1.1 of the Loan Agreement is further amended by amending and restating paragraphs (a) and (c) of the definition of Financial Covenants as follows:

> (a)      Minimum Adjusted Tangible Net Worth. The Borrower will not permit its Adjusted Tangible Net Worth to be less than $70,000,000, tested quarterly beginning with the fiscal quarter ending on June 30, 2019.

> (c)      Net Income. The Borrower will not permit its Net Income to be less than $1, tested as of the end of each June 30 (for the six-

Detroit_16040695_2

month period then ending) and December 31 (for the twelve-month period then ending) beginning June 30, 2019.

2.      **Amendment to Revolving Note**.  The Revolving Note is amended by changing the "Revolving Loan Maturity Date" to June 1, 2020.

3.      **Effectiveness**. This Amendment shall become effective (the "Amendment No. 3 Effective Date") upon Lender's receipt of counterparts of this Amendment, duly executed and delivered by the Borrower and the Lender.

4.      **Representations and Warranties**. The Borrower hereby represents and warrants that, after giving effect to this Amendment (a) execution and delivery of this Amendment, and the performance by the Borrower of its obligations under the Loan Agreement as amended hereby (herein, as so amended, the "Amended Loan Agreement") are within the Borrower's corporate powers, have been duly authorized, are not in contravention of applicable law or the terms of its certificate of incorporation, bylaws,  or other organizational documents of the Borrower and except as have been previously obtained do not require the consent or approval, material to the amendments contemplated in this Amendment or the Amended Loan Agreement, of any governmental body, agency or authority, and this Amendment and the Amended Loan Agreement, will constitute the legal, valid and binding obligations of the Borrower enforceable in accordance with their terms, except as enforcement thereof may be limited by applicable bankruptcy, reorganization, insolvency, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (whether enforcement is sought in a proceeding in equity or at law), (b) the representations and warranties set forth in the Amended Loan Agreement are true and correct on and as of the date hereof, and (c) no Default or Event of Default has occurred and is continuing as of the Amendment No. 3 Effective Date.

5.      **Continuing Effect**. Except as specifically set forth above, this Amendment shall not be deemed to amend or alter in any respect the terms and conditions of the Loan Agreement (including without limitation all financial covenants), the Note issued thereunder or any of the other Loan Documents, or to constitute a waiver or release by the Lender of any right, remedy, Default or Event of Default under or a consent to any transaction not meeting the terms and conditions of the Loan Agreement, the Note issued thereunder or any of the other Loan Documents.

6.      **Definitions**. Unless otherwise defined to the contrary herein, all capitalized terms used in this Amendment shall have the meaning set forth in the Loan Agreement.

7.      **Counterparts**. This Amendment may be executed in counterparts.

8.      **Choice of Law**. This Amendment shall be governed by and construed in accordance with and governed by the laws of the State of Michigan.

**[SIGNATURES BEGIN ON FOLLOWING PAGE]**

2

Detroit_16040695_2

WITNESS the due execution hereof as of the day and year first above written.

**LENDER:**                                          **BORROWER:**

**FLAGSTAR BANK, FSB**                              **LIVE WELL FINANCIAL, INC.**

By: _____                      By: _____
Name: ___R. Joseph Lathrop___                       Name: ___Michael C. Hild___
Title: ___SVP___                                     Title: ___Chairman & CEO___

[Signature Page to Amendment No. 3 (16040695)]