UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLAGSTAR BANK FSB,

     Plaintiff,

                                    Case No. 19-cv-11512

v.                                Hon. Matthew F. Leitman

MICHAEL C. HILD, *et al.*,

     Defendants.

_____/

## <u>ORDER DENYING MOTION TO TRANSFER CASE (ECF No. 64)</u>

In this civil action, Plaintiff Flagstar Bank, FSB ("Flagstar") brings several claims against Live Well Financial, Inc. ("Live Well") and three of Live Well's former officers: Michael C. Hild, Eric Rohr, and Charles Stumberger.  This action has been stayed as to Live Well because Live Well is currently in bankruptcy proceedings before the United States Bankruptcy Court for the District of Delaware. (*See* Stay Order, ECF No. 8.)  Now before the Court is a motion by Hild to transfer this action to the United States District Court for the District of Delaware. (*See* Mot., ECF No. 64.)  For the reasons explained below, the motion is **DENIED**.

**I**

Flagstar is a "federally chartered savings bank" headquartered in Troy, Michigan. (Sec. Am. Compl. at ¶ 8, ECF No. 15, PageID.456.[1])  Live Well is a financial company "primarily involved [in] originating, servicing, and securitizing Home Equity Conversion Mortgages ('HECMs'), also known as 'reverse mortgages.'" (*Id.* at ¶ 16, PageID.457.)  Between 2016 and 2019, when the events at the center of Flagstar's allegations took place, Hild was the Chairman and Chief Executive Officer of Live Well. (*Id.* at ¶ 10, PageID.456.)  Eric Rohr was Live Well's Chief Financial Officer, and Charles Stumberger was the company's Executive Vice President in charge of managing its bond portfolio. (*Id.* at ¶ 11-12, PageID.456-457.)

In 2016 and 2017, Flagstar and Live Well executed a series of agreements in which Flagstar agreed to extend credit to Live Well. (*See* Loan Agmts & Loan Notes, ECF Nos. 15-2, 15-3, 15-4, 15-5.)  Flagstar drafted and signed the agreements in Michigan (*see* Mortgage Loan Agmt., ECF No. 15-2, PageID.569; Bond-Secured Loan Agmt., ECF No. 15-4, PageID.617), and the agreements specified that Live Well should direct all payments to Flagstar's Michigan office. (*See* Mortgage Loan Note, ECF No. 15-3, PageID.575; Bond-Secured Loan Note, ECF No. 15-5,

---

[1] The document filed by Flagstar is labeled "Amended Complaint," but it is actually the Second Amended Complaint.  Flagstar first filed an Amended Complaint on May 31, 2019. (*See* ECF No. 5.)

PageID.640.)  Defendant Hild also executed a "Continuing Guaranty of Payment," in which he guaranteed payment of Live Well's obligations. (*See* Guaranty, ECF No. 15-6.).

Both loan agreements and Hild's guaranty included forum selection clauses in which the parties agreed that any disputes arising out of their agreements would be litigated before a Michigan state court or the United States District Court for the Eastern District of Michigan. (*See* Guaranty, ECF No. 15-6, PageID.660; Mortgage Warehousing Loan Agmt., ECF No. 15-2, PageID.535; Bond-Secured Loan Agmt., ECF No. 15-4, PageID.612.)  The parties further agreed that any disputes arising from their agreements would be governed by the laws of the state of Michigan. (*See id.*)

In this action, Flagstar alleges that Live Well breached the loan agreements, that Hild breached the guaranty, and that all of the defendants fraudulently induced Flagstar to extend credit under the loan agreements. (*See* Sec. Am. Compl., ECF No. 15.)

On July 10, 2019, a number of Live Well's creditors (including Flagstar) initiated bankruptcy proceedings against Live Well.  Those proceedings are now pending in the United States Bankruptcy Court for the District of Delaware. *See In re: Live Well Financial Inc.*, Case No. 19-11317 (Bankr. D. Del.).

On January 5, 2023, Defendant Hild filed a motion to transfer this action to the United States District Court for the District of Delaware. (*See* Mot., ECF No. 64.)  In that motion, Hild contends that a transfer is appropriate under two statutes: 28 U.S.C. 1404(a) ("Section 1404(a)") and 28 U.S.C. 1412 ("Section 1412").

For the reasons explained below, the motion is **DENIED**.

## II

The Court begins with Hild's argument that transfer is appropriate under Section 1412.  That statute provides that "[a] district court may transfer *a case or proceeding under Title 11* to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added).

Section 1412 does not apply here because this civil action is not "a case or proceeding under Title 11."  Thus, Hild is not entitled to a transfer under that statute. *See, e.g.*, *Aldridge v. Regions Bank*, 2021 WL 4718489, at *4 (E.D. Tenn. Oct. 8, 2021) (holding that Section 1412 does not authorize the transfer of a civil action unless the action is brought under Title 11); *Rumore v. Wamstad*, 2001 WL 1426680, at *2 (E.D. La. Nov. 13, 2001) (same).[2]

---

[2] There is admittedly a body of case law holding that Section 1412 does authorize the transfer of at least some actions that are not brought under Title 11. *See, e.g.*, *JWW Hotel Holdings, Inc. v. W&H Realty, LLC*, 2018 WL 3772179, at *4 n.3 (S.D. Ohio Aug. 9, 2018) (acknowledging split of authority on the reach of Section 1412). But the plain language of Section 1412 must control, *see Niz-Chavez v. Garland*, 141 S.Ct. 1474, 1484 (2021), and that plain language limits the reach of Section 1412 to actions and proceedings filed "under Title 11."

### III

Next, the Court turns to Hild's alternative contention that transfer is also appropriate under § 1404(a).  That statute provides that, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  Under Section 1404(a), "the movant bears the burden of demonstrating that 'fairness and practicality strongly favor the forum to which transfer is sought.'" *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 341 F.Supp.2d 734, 749 (E.D. Mich. 2004) (quoting *Rowe v. Chrysler Corp.*, 520 F.Supp. 15, 16 (E.D. Mich. 1981)).

When deciding whether the moving party has satisfied this burden, a district court should normally consider: (1) "the private interests of the parties, including their convenience and the convenience of potential witnesses," and (2) "public-interest concerns, such as systemic integrity and fairness." *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).  Courts should weigh these considerations on an "individualized, case-by-case" basis, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)), and grant the plaintiff's choice of forum "substantial deference." *Audi AG and Volkswagon of America*, 341 F.Supp.2d at 749.  As the "permissive language" of §

1404(a) suggests, "district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (*quoting Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)).

The "calculus" under Section 1404(a) changes when, as in this case, "the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas, et al.*, 571 U.S. 49, 63 (2013) (internal quotations and citations omitted). Where the parties have agreed to a specific forum, a court should conclude that the private interest factors weigh in favor of litigating in that forum. As the Supreme Court explained in *Atlantic Marine*:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. As we have explained in a different but instructive context, [w]hatever inconvenience [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.

*Id.* at 64 (internal quotations and citations omitted).[3]  Simply put, "[a]fter *Atlantic Marine,* when a valid and enforceable forum selection clause exists between the

---

[3] This case differs from *Atlantic Marine* because Hild is moving for a transfer *away* from the venue that the parties agreed on. By contrast, the Defendant in *Atlantic Marine* moved for a transfer *to* the venue agreed upon in the parties' forum selection clause. Nonetheless, the reasoning of *Atlantic Marine* applies here. *See United*

parties and one party moves to transfer venue pursuant to section 1404(a), the court should not weigh private factors such as convenience of the parties and their friendly witnesses; those considerations automatically weigh in favor of the preselected forum. Rather, only public factors should be considered." *United American Healthcare Corp. v. Backs*, 997 F.Supp.2d 741, 748 (E.D. Mich. 2014).

Moreover, these public interest factors will "rarely" weigh in favor of litigating in a forum other than the one agreed upon by the parties in their contract, and therefore "forum-selection clauses should control except in unusual cases." *Atlantic Marine*, 571 U.S. at 64. Stated another way, [w]hile the existence of a valid forum selection clause between the parties "is not dispositive," *Backs*, 997 F.Supp.2d at 748 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)), it "should be given controlling weight in all but the most exceptional cases." *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk Assur. Co.*, 590 Fed. App'x 482, 487 (6th Cir. 2014).[4]

---

*American Healthcare Corp. v. Backs,* 997 F.Supp.2d 741, 748 (E.D. Mich. 2014) (applying *Atlantic Marine* to a Defendant's effort to transfer venue away from the agreed upon venue); *Great Lakes Tower, LLC v. Cameron Wire & Cable, Inc.*, 2020 WL 6685104, at *3 (E.D. Mich. Nov. 12, 2020) (same).

[4] Hild does not contend that the forum selection clauses are unenforceable under Michigan or Federal law.

This is not a "most exceptional case" in which the public interest factors strongly counsel in favor of litigating outside of the parties' agreed-upon venue. On the contrary, those factors favor litigating here – as the parties chose to do. First, the parties have agreed that the loan agreements and guaranty are governed by Michigan law, and this Court is quite familiar with that governing law. Second, Michigan has an interest in having this action adjudicated here because the action has important connections to Michigan. Flagstar, the alleged victim of Defendants' fraud and the entity that suffered the losses as a result of the Defendants' alleged breaches of contract, is located here. Moreover, Flagstar executed the loan agreements in Michigan, and Defendants were obligated to make payments in Michigan. (*See* Mortgage Loan Note, ECF No. 15-3, PageID.575; Bond-Secured Loan Note, ECF No. 15-5, PageID.640.)

Finally, the Court is not persuaded that litigating this action here will undermine judicial efficiency. There is reason to believe that this action will not require the use of extensive judicial resources no matter where it proceeds. That is because Flagstar may well be entitled to judgment in its favor – at least as to liability on its fraud claim against Hild – on the basis of collateral estoppel. Hild was recently convicted of fraud offenses in a federal prosecution, s*ee U.S. v. Hild*, Case No. 19-cr-00602 (S.D.N.Y.), and Hild has acknowledged that the Flagstar's fraud claim here largely (if not entirely) mirrors the fraud charges of which he was convicted. (*See*

Mot. to Extend Stay, ECF No. 57, PageID.1136.)  Thus, Hild may be estopped from denying liability on the fraud claims. *See, e.g.*, *In re Continental Capital Inv. Services, Inc.*, 2008 WL 4279551, at *5 (Bankr. N.D. Ohio Sept. 12, 2008) (finding that corporate officer was "collaterally estopped form relitigating the facts upon which his conviction was based").  This Court should therefore be able to efficiently resolve the claims against Hild.

For all of these reasons, the Court concludes that Hild has not carried his heavy burden of showing that transfer is appropriate under Section 1404(a).

## IV

For the reasons explained above, Defendant Hild's Motion to Transfer (ECF No. 64) is **DENIED.**

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 4, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 4, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126