UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

FLAGSTAR BANK, FSB,
Plaintiff,

v.                                                              Case No. 19-cv-11512

MICHAEL C. HILD, et al.,                                        Hon. Matthew F. Leitman
Defendants.

---

## DEFENDANT MICHAEL C. HILD'S RESPONSE TO ORDER TO SHOW CAUSE

---

Defendant Michael C. Hild, proceeding pro se, respectfully submits this Response to the Court's April 15, 2026 Order to Show Cause.[1]

The Court has identified issues concerning certain citations contained in Defendant's Motion for Leave to Conduct Additional Discovery and Reply. Defendant addresses those concerns directly below and provides a complete clarification and correction of the record.

As part of that effort, Defendant has also prepared corrected versions of both the Motion and the Reply, attached as Exhibits A and B, which are limited solely to the correction of legal citations and do not alter the substance of the arguments presented.

---

[1] Defendant Hild has prepared and filed this document pro se but it is written in third person for the sake of clarity when reading. Defendant Hild is not an attorney. Defendant Hild does not waive the right to maintain the confidential treatment of his attorney-client privileged communications.

1

## I. SOURCE OF THE CITATIONS

The citations identified by the Court were obtained through the use of artificial intelligence tools used as a research aid.

Defendant is not an attorney and does not have formal legal training in case law research. Following the Court approved withdrawal of prior counsel in its September 29, 2025 order, and pursuant to the Court's directive in that same order to file a motion addressing discovery within two weeks (October 13, 2025), Defendant utilized available tools to help identify potentially relevant legal authorities under constrained circumstances.

The factual content of the Motion and Reply—including the detailed discussion of witnesses, procedural history, and discovery needs—was independently drafted by Defendant. Artificial intelligence was used to assist in identifying legal authorities.

Defendant now recognizes that, as a litigant appearing before this Court, he bears the responsibility to independently verify all cited authority, regardless of the source.

## II. EXISTENCE AND ACCURACY OF CITATIONS

Upon review in light of the Court's Order, Defendant acknowledges that certain cited authorities are inaccurate or unsupported.

Defendant did not intentionally fabricate any authority. Rather, Defendant relied on research outputs that appeared facially valid but were not independently verified.

Defendant now understands that such tools may produce unreliable citations and that independent verification is required in all filings before this Court.

## III. REVIEW OF AUTHORITIES

Defendant reviewed summaries of certain authorities and relied on those summaries in good faith to understand general legal principles, including standards relating to diligence, excusable neglect, and procedural fairness.

Defendant did not independently retrieve and read every full opinion or verify every quotation and pinpoint citation prior to filing. Defendant acknowledges that this was insufficient and accepts full responsibility for submitting the inaccurate citations.

## IV. USE OF ARTIFICIAL INTELLIGENCE

Defendant used artificial intelligence tools to assist with legal research.

This was Defendant's first meaningful foray into the use of such tools for case law research. Defendant did not understand at the time that such tools may generate inaccurate citations.

Defendant used these tools in good faith to comply with the Court's directive without access to counsel and under a tight timeframe—not as a means to mislead the Court.

Defendant will not rely on such tools for case citations going forward without independent verification.

## V. CLARIFICATION AND CORRECTION OF CITATIONS

To ensure complete accuracy and eliminate any risk of further error, Defendant undertook a conservative approach to correcting the citations contained in the Motion and Reply.

3

Rather than attempting to preserve or recharacterize marginal or uncertain authorities, Defendant removed any citation that could not be independently verified with confidence or that was previously relied upon for a proposition not clearly supported by the underlying opinion.

## A. Withdrawn Citations

Defendant withdraws reliance on the following authorities:

• Century Prod., Inc. v. S. Home Designs, Inc.

• Andre v. Bodi

• Rodriguez v. Hirshberg Acceptance Corp.

• Yeschick v. Mineta

• In re Nat'l Prescription Opiate Litigation

• Inge v. Rock Fin. Corp.

## B. Verified and Retained Authorities

The corrected filings now rely solely on:

• Leary v. Daeschner, 349 F.3d 888 (6th Cir. 2003);

• Haines v. Kerner, 404 U.S. 519 (1972); and

• Maples v. Thomas, 565 U.S. 266 (2012).

4

These authorities are cited only for general, well-established propositions.

**C. Effect of Corrections**

The corrected filings reflect a deliberate narrowing of legal citations. Where uncertainty existed, citations were removed rather than revised.

As a result, the Motion and Reply now rely primarily on:

• the factual record;

• the procedural history of the case; and

• the governing rule (Federal Rule of Civil Procedure 16(b)(4))

This approach ensures that the Court is presented only with authorities that are accurate and appropriately relied upon.

**VI. SUBMISSION OF CORRECTED FILINGS (EXHIBITS A AND B)**

To assist the Court and eliminate any ambiguity, Defendant has prepared corrected versions of both the Motion and the Reply, attached as **Exhibits A and B**.

These corrected versions reflect the removal and narrowing of the citations described above.

Importantly:

• No factual assertions have been changed;

 • No new arguments have been added; and

5

• No substantive positions have been altered.

The purpose of these corrected versions is to provide the Court with clean copies of the Motion and Reply with the identified citation issues removed, so that the Court may evaluate the Motion without needing to parse the original filings.

Defendant does not seek to expand the scope of briefing, but only to ensure the Court has an accurate legal framework for evaluating the Motion already before it.

## VII. SANCTIONS ANALYSIS

Sanctions are not warranted.

### A. No Intent to Mislead

There was no intent to fabricate authority or mislead the Court. The errors resulted from:

- Defendant's pro se status;
- reliance on flawed research tools; and
- lack of formal legal training.

The errors were confined to legal citations and parentheticals; no factual assertions regarding the procedural history, prior counsel's conduct, or the discovery record were affected. Those factual assertions remain fully supported by the record, including ECF No. 144 and its exhibits.

**B. Court-Directed Motion Following Prior Detailed Evidentiary Submission**

Defendant did not arrive at the present Motion in a vacuum. Prior to the Court's directive to proceed by formal motion, Defendant had already submitted a detailed, evidence-supported response to counsel's withdrawal which laid out, in substantial detail, the complete failure of prior counsel to conduct discovery, meet deadlines, or advance the case.

That submission was not a generalized complaint. It included specific examples, supporting documentation, and a comprehensive explanation of why additional discovery was necessary—namely, that prior counsel had failed to issue subpoenas, failed to pursue document discovery, failed to conduct depositions, and failed to preserve or organize what little information had been obtained. See Defendant's Response to Motion to Withdraw (ECF No. 144) at 2–4.

Despite that extensive evidentiary showing, Defendant was instructed that any request for relief would need to be presented through a separate, formal motion identifying specific discovery and demonstrating good cause.

Defendant therefore complied with that directive. However, in doing so, Defendant was required to reconstruct—without the benefit of counsel, and without access to a complete discovery record—the very same issues that had already been presented to the Court in detail. This included attempting to piece together the status of discovery, identify missing materials, and reframe previously documented failures into formal motion practice.

Compounding this burden, Defendant lacked access to even a basic discovery inventory, as prior counsel failed to provide or complete such materials despite repeated requests. As reflected in Defendant's Response to Motion to Withdraw (ECF No. 144), including but not limited to its

7

Exhibit D, Defendant was forced to begin reconstructing the discovery record independently with incomplete information and no meaningful assistance.

In addition, Defendant attempted to resolve these issues without motion practice through direct engagement with both prior counsel and opposing counsel. Those efforts were unsuccessful, leaving formal motion practice as the only available path.

Accordingly, the Motion reflects not an initial request for discovery, but a compelled re-presentation—under formal procedural requirements—of issues that had already been documented extensively before the Court, prepared under significant constraints, without legal training, and without the benefit of a complete factual record.

## C. Lack of Prejudice

Plaintiff's Opposition did not identify or challenge any of the citations at issue. The issue was first raised by the Court.

Accordingly:

- Defendant had no reason to believe citation issues existed at the time of filing; and

- the errors did not form the basis of Plaintiff's opposition or any claim of prejudice.

## D. Prompt and Complete Correction

Upon the Court raising these concerns, Defendant promptly reviewed all citations, withdrew improper authorities, and prepared corrected, citation-limited versions of the Motion and Reply,

8

which are attached as **Exhibits A and B**. These corrections were completed well before the April 22, 2026 deadline set by the Court.

### E. Nature of the Errors

The issues identified by the Court arise from citation errors, not from any attempt to fabricate facts, misrepresent the record, or submit false evidence.

These errors were the result of an honest mistake in relying on unverified research outputs, not any intent to mislead the Court.

The underlying factual assertions in Defendant's Motion and Reply—including the procedural history, the absence of discovery, and the need for additional discovery—remain unchanged and are supported by the record.

Defendant, proceeding pro se, prepared and filed these submissions himself under circumstances requiring the application of technical legal standards without the assistance of counsel. Upon the Court identifying citation concerns, Defendant withdrew any mistaken or marginal authorities and corrected the record in full.

### VIII. CONCLUSION

Defendant respectfully submits that the citation errors were inadvertent and not made in bad faith.

Defendant has taken comprehensive steps to correct the record and to provide the Court with reliable legal authorities for evaluating the Motion.

9

Accordingly, Defendant respectfully requests that the Court:

- decline to impose sanctions; and

- consider the corrected Motion for Leave to Conduct Additional Discovery on its merits, as clarified by the corrected filings submitted herewith.

DATED: April 16, 2026

Respectfully submitted,

Michael C. Hild, pro se
2302 E. Marshall Street
Richmond, VA 23223
michaelchristopherhild@gmail.com
804.306.4314

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, a true copy of the foregoing was served via email to Mr.

Joseph Shannon and Mr. Darren Stumberger and via the Court's pro se upload system.

Michael C. Hild

Pro Se Defendant

2302 E Marshall Street

Richmond, VA 23223

804.306.4314

**Exhibit A**

CORRECTED VERSION OF DEFENDANT HILD'S MOTION FOR LEAVE TO CONDUCT
ADDITIONAL DISCOVERY

(ECF 149, entered: October 10, 2025)

(Corrections Limited to Citation Issues Identified by the Court)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| FLAGSTAR BANK, FSB,<br>a Federally Chartered Savings Bank,<br><div align="right">Plaintiff,</div><br>v.<br>LIVE WELL FINANCIAL, INC.,<br>a Delaware corporation,<br>MICHAEL C. HILD, an individual,<br>ERIC ROHR, an individual, and<br>CHARLES DARREN STUMBERGER, an<br>individual,<br><div align="right">Defendants.</div> | Case No. 19-11512<br>Hon. Matthew F. Leitman |

**DEFENDANT MICHAEL C. HILD'S MOTION FOR LEAVE TO CONDUCT**
**ADDITIONAL DISCOVERY**

Defendant Michael C. Hild, proceeding pro se ("Defendant Hild"), respectfully moves this Court

pursuant to Federal Rule of Civil Procedure 16(b)(4) for leave to conduct additional discovery

outside the deadlines set forth in the Court's Scheduling Order [ECF No. 77].[1] In support of this

Motion, Defendant Hild states as follows:

**I. INTRODUCTION**

Defendant Hild, previously represented by Mr. Charles Brown, was unable to complete

discovery within the time limits prescribed by the Scheduling Order due to Mr. Brown's failure

to conduct or follow through with meaningful discovery, followed by his withdrawal after the

---

[1] Defendant Hild has prepared and filed this document *pro se* but it is written in third person for the sake of clarity when reading. Defendant Hild is not an attorney. Defendant Hild does not waive the right to maintain the confidential treatment of his attorney-client privileged communications.

1

discovery period closed. Mr. Brown led Defendant Hild to believe that discovery was actively proceeding, only for Defendant Hild to discover upon belated receipt of the case file months later—and after nearly half a year of withholding following a formal written request—that essentially no discovery had occurred in this case.

It bears repeating that Mr. Brown informed Defendant Hild verbally and in writing (see email already supplied to this Court as part of Defendant Hild's Response to Mr. Brown's Motion to Withdraw as ECF No. 144 Exhibit B subexhibit D) that his personal eldercare responsibilities, including the death of his father and the resultant care for his recently widowed mother, prevented Mr. Brown from working diligently on the case, but this was only conveyed to Defendant Hild after discovery closed. This communication is again repeated here for the Court's ease of reference:

*"I have had a number of recent personal issues from my recently widowed mother having a kitchen fire (with me being the only sibling that is local to having to take my to the ER two weekends ago to more recently breaking a bone in foot (with multiple doctor visits including this morning) that have led to conclude that it would be best for you to obtain new counsel. None of those issues would be overwhelming in themselves but combined have been rather overwhelming and with trying to keep up with everything during that period has been a bit too much."*

Despite Mr. Brown's rationalizations articulated at the recent hearing for his lack of action in performing discovery—which Defendant Hild respectfully submits are inconsistent with prior communications and were likely influenced by Mr. Brown's concerns over potential litigation from Defendant Hild pertaining to Mr. Brown's negligence (as evidenced by Mr. Brown's already referenced correspondence and requests of Defendant Hild to supply questions to ask of several witnesses in preparation for depositions, to which Defendant Hild supplied to Mr. Brown in a timely manner in October and November of 2023, but for which said depositions

2

inexplicably never occurred [again please see ECF No. 144 Exhibit B, subexhibit E])—good cause exists to reopen discovery.[2]

Mr. Brown's claim at the September 26, 2025 hearing attempting to rationalize his lack of discovery is as follows:

*"I mean, there were concerns about Mr. Hild's participation in civil litigation prejudicing his appeal rights and, particularly if he was successful in appeal, a new trial and what would, you know, come from that. I – candidly, Your Honor, I don't have a whole lot of experience in representing people that are in Mr. Hild's procedural posture – or the procedural posture at that time. I can't think of another case where, you know, there was a huge concern about the pending criminal matter or still ongoing criminal matter. You know – potentially, you know, we could have taken, you know, 50 depositions. I would not have taken 50 depositions in this case. We did take the deposition of a Flagstar representative."*

Taking discovery from third parties would not have adversely affected Defendant Hild's criminal case. To the contrary, it would have helped, as Defendant Hild was denied access to key evidence in violation of *Brady* in the criminal case, further exacerbated by the conflict of Defendant Hild's former counsel, Mr. Benjamin Dusing, who has been jailed twice and suspended from practicing law for his actions as outlined in Mr. Hild's bar complaints (and others). Defendant Hild has been diligently seeking the truth from witnesses and stakeholders despite years of challenges in this case, the companion Delaware case, and the related criminal case, since they all involve similar allegations pertaining to "fraud" and duties to disclose.

Despite Defendant Hild wanting the depositions to occur, Mr. Brown did not hold depositions from any of the key third party witnesses: not Mr. Stumberger, not Live Well's accountants/auditors (Matt McDonald of Keiter), not Mr. Foster (the person at Live Well who

---

[2] Depositions that Mr. Brown was to hold, never occurred in this case or the companion case in Delaware Bankruptcy Court, even for the witnesses upon whom Mr. Brown served subpoenas, and for those Defendant Hild was requested to supply questions (and Defendant Hild in turn supplied to Mr. Brown in October and November of 2023).

3

was creating the bond valuations IDC requested), not IDC (the third party pricing service), not Bloomberg, not Mr. Haddock, not Mr. Kirk Evans, not Mr. Hild's former attorneys upon whom he relied for counsel (William Donnelly, Tom McGonigle, and Kevin Muldowney), and not the Securities and Exchange Commission. Mr. Brown conducted almost no discovery whatsoever.

Making matters worse, the deposition of Mr. Marsh of Flagstar Bank was of limited utility, as Mr. Marsh claimed lack of knowledge on key questions, stating that the executives of Flagstar Bank held the relevant information, not Mr. Marsh.

Given this, Mr. Brown's after-the-fact rationalizations are inconsistent with his earlier communications to Defendant Hild about pursuing discovery (production and depositions) which never occurred, and regarding his conflicting eldercare responsibilities.

This Motion is made in good faith, demonstrates Defendant Hild's diligence since proceeding *pro se*, and will cause no undue prejudice to Plaintiff. Granting this relief is necessary to ensure a fair adjudication on the merits and to prevent prejudice to Defendant Hild resulting from his former counsel's limitations. Otherwise, this case risks being resolved without consideration of the evidence necessary for Defendant Hild's defense, which would result in a sham trial.

## II. STATEMENT OF FACTS

1. This action was filed on May 22, 2019, with a second amended and restated complaint filed November 14, 2019 alleging breach of contract, fraud, and related claims arising from mortgage-backed securities transactions.

4

2. Defendant Hild was initially represented by Charles Brown, Esq., who entered an appearance on or about June 13, 2023.

3. Mr. Brown communicated to Defendant Hild that discovery was commencing immediately, with ongoing communication thereafter. By way of example, a copy of the email communication from June 23, 2023 from Mr. Brown is provided as **Attachment A**, outlining an initial set of subpoenas to be issued to various financial institutions involved in the matter, along with research. However, it appears that none of these subpoenas were actually issued by Mr. Brown in this case.

4. The Court issued a Scheduling Order on August 1, 2023 [ECF No. 77], setting a discovery deadline and other pretrial deadlines.

5. According to the recently supplied discovery inventory spreadsheet, immediately following the issuance of the Scheduling Order on August 1, 2023, Mr. Brown apparently issued numerous subpoenas, but for only a subset of the witnesses to be subpoenaed in this case in a flurry of activity, but inexplicably only in the companion Delaware case in Bankruptcy Court, not in this Michigan case (e.g., Customers Bank, ICE Data Pricing, Industrial and Commercial Bank, and Mirae Asset Securities all on 8/3/23, and Flagstar Bank on 8/4/23).

6. Mr. Brown continued issuing subpoenas (with little to no follow through), but inexplicably only in the companion Delaware case in Bankruptcy Court, not in this Michigan case (e.g., Bloomberg on 12/15/23, William Donnelly 1/17/24, Baird on 8/19/24, the SEC on 12/8/24, and Dan Foster on 5/9/24).

7. During the discovery period, Mr. Brown repeatedly assured Defendant Hild that discovery was being conducted, including requests of Defendant Hild to supply questions to ask of several witnesses in preparation for depositions, to which Defendant Hild supplied to Mr.

Brown in a timely manner in October and November of 2023, but for which said depositions inexplicably never occurred (again please see ECF No. 144 Exhibit B, subexhibit E).

8. In a written communication dated October 7, 2024 [previously supplied to this Court in Response to Mr. Brown's Motion to Withdraw as ECF No. 144 Exhibit B subexhibit D], Mr. Brown informed Defendant Hild that his personal eldercare responsibilities had prevented him from working on the case, but this disclosure came only after discovery had already closed. In a follow up communication Mr. Brown attempted to allay Mr. Hild's concerns, stating that he was still pursuing discovery, but that did not occur (see below).

9. Suspecting that there were problems with the lack of discovery conducted in this case, Defendant Hild promptly requested the case file from Mr. Brown, specifically in the form of the discovery inventory spreadsheet with links to pertinent discovery production on May 12, 2025. However, Mr. Brown withheld the discovery spreadsheet and files for almost half a year, providing them only one and a half business days before the September 26, 2025 hearing, keeping Defendant Hild in the dark as to the lack of discovery conducted.

10. After the discovery deadline passed, Mr. Brown filed a Motion to Withdraw on September 8, 2025 [ECF No. 142], citing conflicts that rendered continued representation impossible. The Court granted the Motion on September 29, 2025 [ECF No. 146], leaving Defendant Hild without counsel.

11. Review of the file revealed that almost no requests for production or depositions had been served on Defendant Hild's behalf during the discovery period, with the exceptions of depositions of Mr. Robert Marsh and Mr. Chris Bowman, contrary to Mr. Brown's representations to Defendant Hild.[3]

---

[3] In fact, it appears according to Mr. Brown having completed the discovery inventory spreadsheet that Mr. Brown has only issued a subpoena to Flagstar Bank in the companion Delaware case, but for which no production

12. Mr. Brown has since offered rationalizations for the lack of discovery at the September 26, 2025 hearing which conflict with Mr. Brown's communications with Defendant Hild regarding his conflicting eldercare responsibilities, and his communications regarding his pursuit of production and depositions.

13. Defendant Hild is unable to obtain new counsel due to the case's complexity and financial constraints. Defendant Hild now proceeds *pro se* and seeks an extension—specifically, a 180-day period—to serve targeted requests for production and conduct depositions on Plaintiff, co-Defendants, and essential third parties regarding key issues, including the valuation of securities, communications between parties, and financial records supporting the claims. Based on historical experience, certain witnesses and document holders (e.g., Dan Foster, the Securities and Exchange Commission, Bloomberg, the Southern District of New York, Baird, etc.) may employ evasion tactics as demonstrated in prior proceedings [see ECF No. 144 Exhibits B, D, E1-E6, F]. Such parties may not cooperate without compulsion, necessitating the 180-day period. Even 180 days may require a potential extension if delays occur through avoidance, motion practice, or hearings, as seen in the companion Delaware case.

14. Defendant Hild notified Plaintiff of this intent via email dated October 7, 2025, and conferred in good faith pursuant to Local Rule 7.1(a), but no agreement was reached. A copy of the email correspondence is included as **Attachment B**.

---

whatsoever has been supplied to Defendant Hild as part of the discovery inventory spreadsheet or associated case files. If production has been supplied to Mr. Brown from Flagstar Bank, it has not been supplied to Defendant Hild as part of the discovery inventory spreadsheet and associated case files. Defendant Hild has reached out to Mr. Brown for clarification, including any case files that he mistakenly failed to supply (if any), but have received no response.

### III. LEGAL ARGUMENT

Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." The Sixth Circuit interprets "good cause" primarily through the lens of the moving party's diligence in attempting to comply with the order, while also considering potential prejudice to the opposing party. Leary v. Daeschner, 349 F.3d 888, 906 (6th Cir. 2003). Additional factors include when the movant learned of the need for discovery, how it would affect the case, the length of the original discovery period, whether the movant was dilatory, and the opponent's responsiveness. The "overarching inquiry" remains diligence. Courts also weigh prejudice, ensuring modifications promote fairness without undue burden.

Here, good cause exists, as supported by the following precedent, particularly from the Eastern District of Michigan and Sixth Circuit, addressing situations involving attorney withdrawal, limitations in representation, withholding of information, and *pro se* litigants. Defendant Hild was diligent in relying on counsel's assurances and acted promptly upon discovering the issues, distinguishing this from cases where negligence is solely attributable to the party.

1. **Attorney Limitations or Misconduct as Good Cause Where Client is Not at Fault**:
   Defendant Hild's inability to complete discovery stems from Mr. Brown's negligence, misleading representations, and post-closure disclosure of personal eldercare conflicts, not any lack of diligence by Defendant Hild himself. The Sixth Circuit recognizes that attorney failures, such as neglect or abandonment, can constitute good cause or excusable neglect warranting relief, especially when the client was misled and acts diligently upon discovery of

8

the issue. In this district, where counsel's inaction prejudices a client without fault, extensions are granted to avoid injustice. Here, Mr. Brown's withholding of files for nearly half a year exacerbates the issue. Unlike cases where attorney negligence alone bars relief due to lack of party diligence, Defendant Hild was misled and demonstrated personal diligence by promptly requesting files and filing this motion.

2. **Unanticipated Attorney Withdrawal, Delayed Disclosure, and Client Diligence Post-Withdrawal**: The withdrawal after discovery closed, coupled with the delayed disclosure of conflicts and file withholding, justifies reopening. The Sixth Circuit emphasizes context, including unforeseen disruptions like withdrawal and attorney-imposed delays. In Leary, the court emphasized that modification of a scheduling order depends on the movant's diligence in attempting to meet the scheduling order's requirements. 349 F.3d at 906-08. Eastern District cases similarly grant relief post-withdrawal for pro se parties showing diligence. Defendant Hild acted promptly upon receiving the file on September 15, 2025, filing this Motion within weeks (as directed by and in full compliance with this Court's instructions), and identifying targeted discovery needs.

3. *Pro Se* **Status and Equitable Considerations**: While pro se status does not automatically excuse non-compliance, courts hold *pro se* filings to less stringent standards. Haines v. Kerner, 404 U.S. 519, 520 (1972). Here, Defendant Hild's *pro se* efforts satisfy diligence: he learned of the issue post-withholding, additional discovery would allow merits-based defenses, the original period was not underutilized due to counsel's failures, Defendant Hild was not personally dilatory, and little to no discovery occurred as a result.

4. **No Prejudice to Plaintiff**: Severe Prejudice to Defendant Hild if Denied: An extension causes no undue prejudice, as the case is not at summary judgment or trial, and discovery can

9

be narrowly tailored to essential issues. Leary, 349 F.3d at 909. Denying relief would severely prejudice Defendant Hild by foreclosing evidence, potentially leading to adverse rulings. Courts have granted extensions to avoid case-dispositive outcomes even in close calls, prioritizing justice over strict adherence where diligence is shown.

5. **Compliance with Local Rules**: This Motion complies with E.D. Mich. LR 7.1(a) (meet-and-confer) and LR 83.25(c) (post-withdrawal obligations).

## IV. CONCLUSION

For the foregoing reasons, Defendant Hild respectfully requests that the Court grant this Motion and allow a 180-day extension to conduct additional discovery, including the retrieval of documents and depositions from the following essential parties, each of whom possesses unique information central to defending against the allegations in Counts II-VI of the complaint:[4]

- Mr. Darren Stumberger: Codefendant with documents and information related to all allegations; essential for valuation disputes.

- Mr. Glen Haddock: Former CFO of Live Well, referenced in the complaint, with documents and information related to all counts. Defendant Hild seeks to address inconsistencies in prior testimony.[5]

---

[4] Flagstar Bank refers to criminal activity and continuously mentions and relies upon the testimony and outcome of the criminal case in this case. As one of numerous examples, in Count V of the complaint Flagstar Bank alleges "*Hild, Stumberger, and Rohr acted in concert to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal or unlawful means. Namely, defendants acted in concert to defraud Flagstar*"). However, these same allegations went unaddressed by Mr. Hild's former, and now suspended, criminal attorney Mr. Ben Dusing. Mr. Dusing did not enter a single piece of evidence during Mr. Hild's direct testimony, did not subpoena witnesses, did not call key witnesses, and missed important disclosure deadlines for notifying opposing counsel of the intention to rely on the advice of counsel defense, essentially rendering the trial as a sham.

[5] Mr. Haddock testified untruthfully in the companion criminal case, (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4). Defendant Hild must ask Mr. Haddock about the evidence which has already been provided in this case in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit E1, E4, E5].

10

- Mr. Dan Foster: Developer of bond valuations at Live Well, source of conflicting quotes to Bloomberg.[6]

- Mr. Kirk Evans: Live Well employee and interface with Flagstar Bank and Mr. Rohr; testimony expected to contradict Mr. Rohr's prior testimony.[7]

- Matt McDonald (and Keiter): Audit principal for Live Well; testimony to address Mr. Rohr's prior testimony and audited financials, essential for valuation disputes.[8]

- Mr. Chris Krupa (and IDC/ICE): Developer of IDC bond valuations; point of contact with the Securities and Exchange Commission ("SEC"); essential for valuation disputes.[9]

---

[6] Mr. Foster is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. It has recently been discovered that Mr. Foster was the source of the conflicting bond quotes which were supplied to Bloomberg, and upon which Bloomberg relied when producing valuations for Live Well's bonds, which in turn were i) used to place Live Well into default with Flagstar Bank, ii) then place Live Well into bankruptcy, iii) used to "evidence" the alleged inflated IDC valuation in the criminal trial which led to conviction (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4). Defendant Hild must ask Mr. Foster about the evidence which includes evidence already provided in this case in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit B, D, E1-E6, F, G].

[7] Mr. Evans will be able to supply testimony that Defendant Hild believes will contradict Mr. Rohr's evasive and misleading testimony in more recent sworn civil depositions and on the stand in the criminal case which led to conviction (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4). Defendant Hild must ask Mr. Evans about the veracity of Mr. Rohr's testimony and present evidence which will show that Mr. Rohr intentionally attempted to cause Live Well to be torpedoed (with Mr. Evans unwittingly performing key actions at Mr. Rohr's direction) and forced into default with Flagstar, and placed into bankruptcy, in hopes for leniency by the Securities and Exchange Commission.

[8] Mr. McDonald will be able to supply testimony (consistent with interviews in the criminal case) that contradict Mr. Rohr's evasive and misleading testimony in more recent sworn civil depositions and on the stand in the criminal case which led to conviction (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4). Defendant Hild must ask Mr. McDonald about the veracity of Mr. Rohr's testimony and present evidence which will show Mr. Rohr intentionally attempted to cause Live Well to be torpedoed and forced into default with Flagstar Bank and placed into bankruptcy, in exchange for leniency by the Securities and Exchange Commission.

[9] Mr. Krupa was the primary individual who developed, posted, and supplied bond valuations at IDC which Flagstar alleges to be inflated. IDC and Mr. Krupa are in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. It has recently been discovered that Mr. Krupa was the point of contact with the Securities and Exchange Commission, who under its influence and control and under false pretenses, ceased publishing bond valuations in order for the conflicting Bloomberg quotes (relying upon Mr. Foster) to be relied upon, which in turn were used to i) place Live Well into default with Flagstar Bank, ii) then place Live Well into bankruptcy, iii) and to "evidence" the alleged inflated IDC valuation in the criminal trial which led to conviction (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4). Defendant Hild must ask Mr. Foster about the evidence which has already been provided in this case in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit B, E4-5].

11

- SEC and its Staff (Greg Smolar, Reid Muoio, Jeffrey Leisure, Jay Clayton): Alleged orchestrators of events leading to default and bankruptcy; documents and testimony on communications and pressures exerted; essential for valuation disputes.[10]

- Dani James: Former counsel to Mr. Foster; acted as a proxy for Mr. Foster in SEC meetings; essential for valuation disputes.[11]

- Wedbush Securities and its Staff (Scott Skyrym, Jim Kearney, David Weaver), Industrial and Commercial Bank of China, Mirae Asset Securities, Mizuho Bank, Customers Bank: Involved in bond trades and repo agreements central to the case, including movement of bonds between counterparties, including Flagstar Bank; communications with SEC.[12]

---

[10] The SEC and its Staff (Greg Smolar, Reid Muoio, Jeffrey Leisure and Jay Clayton (former head of SEC and now head of SDNY) were the individuals who orchestrated the torpedoing of Live Well by i) pressuring/encouraging Mr. Stumberger to resign,  ii) pressuring/encouraging Mr. Rohr to resign, and prior to leaving the company, secretly directing his staff (without Board or CEO knowledge or approval) to surreptitiously change the repo tracking settings in the federal banking system for the company's bond portfolio causing the company's monthly bond coupon cash to be sent to the lenders rather than the US Bank securities control account, so Live Well would be deprived of access (in violation of its lending agreements) in order starve Live Well of cash and send it spiraling into default with Flagstar Bank, iii) pressuring/encouraging Mr. Foster, (including through/via his counsel Dani James) to set Bloomberg up with conflicting HECM IO bond valuations, and iv) pressuring/encouraging IDC to stop posting Live Well's bond valuations (which Flagstar Bank alleges to be inflated). The SEC and its Staff are in possession of documents and information that must be obtained in document production and via depositions related to the allegations in the complaint. It has recently been discovered that the aforementioned individuals were used by the Securities and Exchange Commission Actors in order to place i) Live Well into default with Flagstar Bank, ii) then place Live Well into bankruptcy, iii) and to "evidence" the alleged inflated IDC valuations in the criminal trial which led to conviction (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4). Defendant Hild must ask the Securities and Exchange Commission Actors about this evidence, including that which has already been provided in this case in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit B, D, Exhibit E1-E6, F].

[11] Dani James, former counsel to Mr. Foster, is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. Defendant Hild must ask Ms. James about the evidence which has already been provided in this case in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit E1-E6]. Per these documents Ms. James acted as a proxy for Mr. Foster in many of the meetings with the Securities and Exchange Commission without Mr. Foster present (see Footnote 4).

[12] Wedbush Securities (Scott Skyrym, Jim Kearney, and David Weaver), Industrial and Commercial Bank, Mirae Asset Securities, Mizuho Bank and Customers Bank as listed in **Attachment A**, but for which Mr. Brown never followed through and actually issued subpoenas in this case. Bond trades via the Repo and lending agreements between Live Well, Flagstar Bank and these financial institutions, and at the bond valuations therein, are at the very heart of this case. Without this information, including communications/directives from the SEC with these parties (which have been hidden until recently and which the Bankruptcy Trustee has alleged in companion litigation precipitated the movement of bonds between trading partners/lenders, including Flagstar Bank, ultimately leading to default with Flagstar Bank, but was originally instigated by secret communications/actions of the SEC with the Repo Parties/Lenders starting in early 2017, perhaps even as far back as the 4th quarter of 2016).

12

- Flagstar Bank and its executive management (Jim Ciroli CFO, Alessandro DiNello CEO, Toby Thomas CIO, Lee Smith COO): Holders of key decision-making information per Mr. Marsh's deposition (which Mr. Marsh testified he did not possess).[13]

- Helios Strategic Advisors LLC (Oliver Dupiton, Tol Ho): Alleged supplier of bond quotes to Bloomberg; to verify lack of evidence produced; essential for valuation disputes.[14]

- Bloomberg's Lawrence "Larry" Mattera Jr.: Corresponded with Mr. Foster on valuations; essential for conflicting BVAL postings.[15]

- David Carickhoff, Live Well Trustee: Possesses emails, chat messages, and corporate documents of key individuals.[16]

---

[13] Flagstar Bank and its Executive Management (Jim Caroli CFO, Alessandro DiNello CEO, Toby Thomas CIO, and Lee Smith COO) are in possession of direct information/knowledge that Mr. Marsh did not have as he stated in his sworn deposition testimony in reply to Mr. Brown's questions: i) "*Q. Okay.  Who ultimately made the decision to run the Article 9 sale and to sell the Live Well bonds? "It would have been the CEO, the CFO, the COO. So Jim Ciroli was our CFO. Alessandro DiNello, CEO. Lee Smith, COO.";* ii) *"Q. Do you know who at Flagstar reviewed the proposed trade tickets when the bonds were sold? A. It would be Toby Thomas. Q. And what's their title? A. Chief investment officer."* These decisions made by Flagstar Bank and its Executive Management caused the losses in question which directly impacted all counts in the case.

[14] Helios Strategic Advisors LLC (Mr. Oliver Dupiton & Mr. Tol Ho) is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. According to Bloomberg's counsel, Helios was allegedly a supplier of bond quotes to Bloomberg on HECM IO bonds, yet Bloomberg failed to produce any evidence in its production to Defendant Hild of Helios having produced broker quotes; only evidence of Mr. Dan Foster was supplied by Bloomberg, thereby contradicting Bloomberg's story, as conveyed by its counsel.

[15] Bloomberg's Lawrence "Larry" Mattera Jr. is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. Mr. Mattera is the individual at Bloomberg who corresponded with Mr. Dan Foster and accepted/used Mr. Foster's broker quotes in posting conflicting valuations at approximately half the value of IDC's valuations in Bloomberg's BVAL system, which in turn were used in order to place i) Live Well into default with Flagstar Bank, ii) then place Live Well into bankruptcy, iii) and then were used to "evidence" the alleged inflated IDC valuations in the criminal trial which led to conviction (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4). Defendant Hild must ask Mr. Mattera about this evidence, including some of which has already been provided in this case in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit B and Exhibit E1-E6].

[16] David Carickhoff, Live Well Trustee, is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. All of Defendant Hild's, Mr. Stumberger's, Mr. Haddock's, Mr. Foster's, Mr. Evans' and Mr. Rohr's emails, Bloomberg chat messages, and corporate documents are in Mr. Carickhoff's possession. Defendant Hild cannot defend this case without access to these communications.

- William Donnelly, Tom McGonigle, Kevin Muldowney: Former counsel to Defendant Hild; advice relied upon for actions alleged in the complaint, and is also essential for valuation disputes.[17]

- Xavier Donaldson: Former counsel to Mr. Stumberger; recipient of alleged threats from the Southern District of New York ("SDNY").[18]

- SDNY and its staff: Documents and testimony pertaining to all Counts (which parrot the allegations in the criminal case), as well as communications and alleged threats related to Mr. Stumberger's plea.[19]

If discovery from the above leads to identification of additional essential witnesses or document holders, Defendant Hild respectfully requests the right to seek further leave upon showing good cause.

---

[17] William Donnelly and Tom McGonigle, and Kevin Muldowney, Defendant Hild's former counselors, are in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. Mr. Hild relied on counsel for the action, or lack thereof, which Flagstar Bank alleges in its complaint and which were used to "evidence" the alleged fraud in the criminal trial which led to conviction (upon which Flagstar Bank relies and refers to continuously in filings in this case, see Footnote 4).

[18] Xavier Donaldson, former counsel to Mr. Stumberger (a codefendant in the case) is in possession of documents and information that must be obtained in document production and via deposition specifically as it pertains to Mr. Stumberger's claim that Mr. Donaldson is the person to whom the SDNY has communicated threats related to participating in the defense of this case as it pertains to Mr. Stumberger's apparently coerced/cajoled guilty plea and corresponding admission to commit fraud, which has now been controverted with conflicting statements by Mr. Stumberger related to communications made in this case as has already been supplied to this Court in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit B], DEFENDANT STUMBERGER'S STATEMENT REGARDING THREATS AND INABILITY TO FULLY DEFEND filed on October 7, 2025 [ECF 148] and the September 26, 2025 hearing transcript [ECF 147].

[19] SDNY and its staff is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint, and also more recently pertaining to the communications which Mr. Stumberger has cited from the SDNY at the September 26th, 2025 hearing who threatened him via his former attorney, Xavier Donaldson, related to participating in the defense of this case as it pertains to Mr. Stumberger's apparently coerced/cajoled guilty plea, and corresponding admission to allegedly commit "fraud" which has now been controverted with conflicting statements by Mr. Stumberger related to communications and statements made in this case, and has already been supplied to this Court in Response to Mr. Brown's Motion to Withdraw [ECF No. 144 Exhibit B], DEFENDANT STUMBERGER'S STATEMENT REGARDING THREATS AND INABILITY TO FULLY DEFEND filed on October 7, 2025 [ECF 148] and the September 26, 2025 hearing transcript [ECF 147].

14

A proposed order is attached hereto as **Attachment C.** Defendant Hild is available for a hearing if deemed necessary.


Respectfully submitted,


Michael C. Hild

Pro Se Defendant

2302 E Marshall Street

Richmond, VA 23223

804.306.4314

Date: April 16, 2026

15

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, a true copy of the foregoing was served via email to Mr.

Joseph Shannon and Mr. Darren Stumberger and via the Court's pro se upload system.

Michael C. Hild

Pro Se Defendant

2302 E Marshall Street

Richmond, VA 23223

804.306.4314

Date: April 16, 2026

16

From: **Michael Hild** michaelchristopherhild@gmail.com
Subject: **Re: Hild Subpoenas**
Date: **Jun 23, 2023 at 1:59:27 PM**
    To: **Charles Brown** cbrown@gsbblaw.com
    Cc: **Jacobs, Brian** bjacobs@maglaw.com

# ATTACHMENT A

Charlie,

Looks great, I think we want to subpoena Wedbush Securities as well. They were the ones who started this whole crisis initially. I have strong reason to believe that was Bush as well as all of these other lenders were in close communication with the SEC, and under their direction to torpedo live Well, in exchange for them getting lighter penalties and or no criminal charges.

On Jun 23, 2023, at 12:25 PM, Charles Brown <cbrown@gsbblaw.com> wrote:

Michael:

I asked one of my colleagues to assist me in issuing subpoenas to the repo lenders. I know that with respect to Customers Bank, I had not looked much further than the fact that you told me that they kept the bonds and when Customers agreed to dismiss the civil suit, it seemed to me to be highly likely that Customers had been paid in full – otherwise why dismiss a case where is a personal guarantee and the guarantor has been convicted of fraud.

*My colleague came from a shareholder derivative / class action shop – and we are really more focused on bankruptcy matters so he brings a different skill set and found out some interesting information – see below.*

Regarding the SEC IDC settlement, if I am reading it correctly, IDC provided valuations from a single broker for 46,000 securities during the relevant time period – of which 48 were Live Well bonds. So relying upon the single broker source does not seem unusual or inappropriate based on those numbers.

I am copying Brian on this. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the issues referenced about Flagstar and ICBCFS resolving government claims against them at the same time that they are cooperating with the government in your criminal case seems like something that he should be aware of.

From: **Michael Van Gorder** <MVanGorder@gsbblaw.com>
Sent: **Friday, June 23, 2023 11:42 AM**
To: **Charles Brown** <cbrown@gsbblaw.com>

**Subject:** Hild Subpoenas

Charlie,

Sorry for taking so long to get these over to you. I've put together schedules to go along with subpoenas for Customers, FlagStar, Mirae, Industrial and Commercial Bank of China Financial Services, and IDC.

Part of what took me so long is that I kind of went down a rabbit hole on these parties. A few things I found interesting:

1. FlagStar had a previous settlement with the DOJ in which they were required to pay $25mm a year until a certain sum total for engaging in what was essentially insurance fraud. After it appears FlagStar started helping the DOJ in this case, a mysterious $25mm DOJ benefit showed up in their financials. Seems fishy to me.
2. Around the same time that ICBCFS was cooperating with the government and pursuing Live Well in BK, ICBCFS settled with the DOJ relating to allegations of "bid-rigging" by their securities lending desk.
3. Mirae seems to be in trouble constantly with the US Govt as well as the South Korean Government for engaging in sketchy market behavior, including "spoofing" and misleading their own clients.
4. IDC did in fact settle with the SEC regarding the LIVE WELL situation. I have attached the order, which doesn't specifically reference Live Well, but it has to be what the settlement was about based on the facts.
5. Wedbush Securities, which appears to have been a significant government witness, at least they are referenced a lot in the SDNY Courts opinions, and was the lender that wanted to talk to dealers about the pricing of the bonds, also settled an SEC case relating to its securities lending desk in 2019, along with pretty much being the scummiest broker out there in general.
6. The initial bonds that Live Well bought came from Stifel, which is where Stumberger came from as well. Stumberger seems to have only been able to stick around at a trading shop for a year or so before having to move along. This typically happens for only three reasons, he didn't make the shop money, lied about his positions, or lost the shop a lot of money. Seems to me that if anyone is guilty of anything here, he is the primary target.

Based on the above, it appears to me that the Govt's case against Hild was based on tainted evidence provided by financial companies and employees looking to stay out of trouble. I wonder if this was ever disclosed to the jury. I also wonder if it was ever disclosed that Live Well's BK was the result of Live Well being squeezed by counterparties that engaged in the same alleged practices.

Let me know your thoughts on the schedules, and I will start pulling addresses to put into the

Subpoena form.

Mike

**Michael Van Gorder**
Attorney
**Gellert Scali Busenkell & Brown, LLC**

<image001.gif>   MVanGorder@gsbblaw.com | P: 302-416-3351 | F: 302-425-5814

1201 N. Orange Street, Suite 300, Wilmington, DE 19801
8 Penn Center, 1628 John F. Kennedy Blvd, Suite 1901,
Philadelphia, PA 19103
**GSBBlaw.com**

<IDC Settlement.pdf>
<2023.06.23 – Subpoena Schedule ICBCFS.docx>
<2023.06.23 – Subpoena Schedule Customers Bank Draft.docx>
<2023.06.23 – Subpoena Schedule FlagStar.docx>
<2023.06.22 – Subpoena Schedule IDC.docx>
<2023.06.22 – Subpoena Schedule Mirae Asset Securities.docx>

From: Michael Hild michaelchristopherhild@gmail.com
Subject: Re: Motion for Leave to Conduct Discovery
Date: Oct 10, 2025 at 1:12:34 PM
To: Joseph Shannon JShannon@bodmanlaw.com
Cc: Darren Stumberger cdjs2013@gmail.com

# ATTACHMENT B

Mr. Shannon,

So I spent the week typing up and justifying what should already be available to me by right had Mr. Brown done his job and followed through in conducting discovery, which he did not do in any meaningful way.

The draft motion (some minor edits may still be made) is attached laying out in excruciating detail the discovery to be conducted and why.

Please advise if this changes your position. If I do not hear back from you before 5pm today, I will file the final motion today.

Respectfully,
Michael Hild

pdf **DRAFT DEFENDANT MICHAEL C. HILD'S MOTIO...**
321 KB

pdf **ATTACHMENT A.pdf**
924 KB

On Oct 7, 2025, at 10:59 AM, Shannon, Joseph <JShannon@bodmanlaw.com> wrote:

This message was sent securely using Zix®

Mr. Hild,
I accept the fact that this is an effort to meet and confer.
Given that you are a pro se party I do not have any interest in making work for you, but I cannot reasonably respond to this request as stated. As the Judge said, and as I was just about to say when the Judge said it, any request for discovery needs to include the

discovery that you want to conduct and the reason that you want to conduct it.
Thus, in short, I cannot consent to your request, but I do not think your naked request is reasonable.
Joseph Shannon


**Joseph J. Shannon**
313-393-7549
JShannon@BODMANLAW.COM



**From:** Michael Hild <michaelchristopherhild@gmail.com>
**Sent:** Tuesday, October 7, 2025 10:45 AM
**To:** Shannon, Joseph <JShannon@BODMANLAW.COM>; Darren Stumberger <cdjs2013@gmail.com>
**Subject:** Motion for Leave to Conduct Discovery

**CAUTION: External Sender.**

Mr. Shannon and Mr. Stumberger,

I am reaching out in an attempt to obtain your voluntary consent for Leave to Conduct Additional Discovery  in FLAGSTAR BANK, FSB, a Federally Chartered Savings Bank, Plaintiff, v. LIVE WELL FINANCIAL, INC., a
Delaware corporation, MICHAEL C. HILD, an individual, ERIC ROHR, an individual, and CHARLES DARREN STUMBERGER, an
individual, Case No. 19-11512.

As explained at the last hearing, I am finding out after the fact that almost no discovery whatsoever by my former counsel, Mr. Charles Brown, has taken place in this case. I have been misled, and greatly prejudiced as a result, at no fault of my own.

If you can please indicate by the end of the day as to whether you consent to my taking additional discovery, I would appreciate it. Please consider this my good faith attempt as a *pro se* defendant to comply with the Court's meet and confer rule.

Respectfully,
Michael Hild

**ATTACHMENT C: PROPOSED ORDER**

FLAGSTAR BANK, FSB,
a Federally Chartered Savings Bank,

Plaintiff,

v.

LIVE WELL FINANCIAL, INC.,
a Delaware corporation,
MICHAEL C. HILD, an individual,
ERIC ROHR, an individual, and
CHARLES DARREN STUMBERGER, an individual,

Defendants.

Case No. 19-11512
Hon. Matthew F. Leitman

---

## ORDER GRANTING DEFENDANT MICHAEL C. HILD'S MOTION FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY

---

This matter comes before the Court on Defendant Michael C. Hild's Motion for Leave to Conduct Additional Discovery pursuant to Federal Rule of Civil Procedure 16(b)(4) [ECF No. ____]. The Court has reviewed the Motion, the supporting materials, and the record in this case. For good cause shown, including Defendant Hild's diligence in proceeding *pro se* after the withdrawal of his former counsel, the absence of undue prejudice to Plaintiff, and the need to ensure a fair adjudication on the merits,

IT IS HEREBY ORDERED that:

1. Defendant Hild's Motion is **GRANTED**.

2. The Court's Scheduling Order [ECF No. 77] is modified to reopen discovery for a period of 180 days from the date of this Order. During this period, Defendant Hild may serve requests for production of documents and conduct depositions on the parties and third-party witnesses identified in the Motion, including but not limited to: Darren Stumberger, Glen Haddock, Dan Foster, Kirk Evans, Matt McDonald (and Keiter), Chris Krupa (and

IDC/ICE/Intercontinental Exchange), Securities and Exchange Commission staff (Greg Smolar, Reid Muoio, Jeffrey Leisure, and Jay Clayton), Dani James, Wedbush Securities (Scott Skyrym, Jim Kearney, and David Weaver), Industrial and Commercial Bank of China, Mirae Asset Securities, Mizuho Bank, Customers Bank, Flagstar Bank and its executive management (Jim Ciroli, Alessandro DiNello, Toby Thomas, and Lee Smith), Helios Strategic Advisors LLC (Oliver Dupiton and Tol Ho), Bloomberg (Lawrence Mattera Jr.), David Carickhoff (Live Well Trustee), William Donnelly, Tom McGonigle, Kevin Muldowney, Xavier Donaldson, and the Southern District of New York and its staff.

3.  If discovery from the above parties leads to the identification of additional relevant witnesses or document holders, Defendant Hild may seek leave from the Court to conduct further discovery from those parties, upon a showing of good cause.

4.  All other deadlines in the Scheduling Order shall be adjusted accordingly, if necessary, to accommodate this extension. The parties are directed to confer and propose any necessary adjustments to the Court within 14 days of this Order.

5.  Defendant Hild shall serve a copy of this Order on all relevant parties and third parties subject to discovery.

**IT IS SO ORDERED.**

Dated: _____

/s/ Hon. Matthew F. Leitman

United States District Judge

**Exhibit B**

CORRECTED VERSION OF DEFENDANT HILD'S REPLY IN SUPPORT OF HIS MOTION
FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY

(ECF 152, entered: October 28, 2025)

(Corrections Limited to Citation Issues Identified by the Court)

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| FLAGSTAR BANK, FSB,<br>a Federally Chartered Savings Bank,<br><div align="right">Plaintiff,</div><br>v.<br>LIVE WELL FINANCIAL, INC.,<br>a Delaware corporation,<br>MICHAEL C. HILD, an individual,<br>ERIC ROHR, an individual, and<br>CHARLES DARREN STUMBERGER, an<br>individual,<br><div align="right">Defendants.</div> | Case No. 19-11512<br>Hon. Matthew F. Leitman |

**DEFENDANT MICHAEL C. HILD'S REPLY IN SUPPORT OF HIS MOTION
FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY**

Defendant Michael C. Hild[1], proceeding pro se ("Defendant Hild"), respectfully submits this

Reply in further support of his Motion for Leave to Conduct Additional Discovery (ECF No.

149) pursuant to Federal Rule of Civil Procedure 16(b)(4). For the Court's convenience,

Defendant Hild relies upon and incorporates the facts, authorities, and exhibits in the Motion,

including the specified list of targeted discovery and reasons therefor. This Reply directly

addresses Plaintiff Flagstar Bank, FSB's ("Flagstar") Opposition (ECF No. 151), demonstrating

good cause for 180 days of limited additional discovery based on prior counsel's deficiencies,

Defendant Hild's diligence, and the necessity of the discovery for trial.

---

[1] Defendant Hild has prepared and filed this document *pro se* but it is written in third person for the sake of clarity when reading. Defendant Hild is not an attorney. Defendant Hild does not waive the right to maintain the confidential treatment of his attorney-client privileged communications.

## I. INTRODUCTION

Flagstar's Opposition mischaracterizes Defendant Hild's Motion as seeking broad, untailored discovery to re-litigate his criminal case. To the contrary, the Motion complies with this Court's directive (ECF No. 146) by identifying discovery with particularity (a succinct 12 item list of entities/individuals, with specific reasons tied to Flagstar's civil fraud and disclosure claims), explaining the need (to obtain documents and testimony on valuations, communications, and duties central to this case), and justifying 180 days given the posture (post-summary judgment denial, and pre-trial, where minimal prior discovery leaves key issues untested). As detailed below, good cause exists under Rule 16(b)(4) due to prior counsel Charles Brown's failure to conduct meaningful discovery, followed by his post-discovery withdrawal—circumstances beyond Defendant Hild's control. The requested 180-day period is necessary to complete this critical discovery, with safeguards proposed to minimize prejudice.

## II. ARGUMENT

### 1. Defendant Hild Complied with the Court's Directive by Identifying Targeted Discovery with Particularity and Explaining Its Need.

Contrary to Flagstar's claim that the Motion provides a "laundry list" without form or connection to issues (Opp. ¶¶ 1-2), Defendant Hild identified specific entities/individuals, the form of discovery (documents and depositions), and reasons tied directly to Flagstar's civil claims—not the criminal case. The targeted discovery is essential for defenses like lack of fraudulent intent (scienter), no material misrepresentation, no causation for losses, and reliance on advice of counsel, which counter Flagstar's fraud, misrepresentation, and breach claims in the Second Amended Complaint (e.g., ¶¶ 1-5 alleging scheme to inflate valuations; ¶¶ 64-69 for breach).

2

Flagstar's rhetoric that Defendant Hild seeks to "reveal inconsistent testimony" from the criminal case (Opp. ¶ 2) ignores that the Motion focuses on civil issues (e.g., loan-specific communications), even if some overlap exists. Defendant Hild does not seek to re-litigate the criminal verdict but to prepare for this trial, where Flagstar itself relies on criminal-record evidence. The specific ties are as follows:

• Deposition and documents from co-defendant Charles Darren Stumberger: To address his role in valuations and disclosures for Flagstar loans (Motion at 3), supporting defenses of lack of fraudulent intent (no scienter in alleged scheme, Compl. ¶¶ 1-4) and no causation (losses due to market factors, not misrepresentations, Compl. ¶¶ 5, 64-69).

• Deposition and documents from Live Well's auditor Matt McDonald (and Keiter): To confirm audit processes and communications re: bond valuations (Motion at 3, 12), supporting defenses of no material misrepresentation (valuations reasonably believed accurate, Compl. ¶¶ 2-4) and reliance on professional advice (audits showed no issues).

• Deposition and documents from Mr. Dan Foster: To explore his development of bond valuations at Live Well and role as a government cooperator providing conflicting quotes to Bloomberg in exchange for leniency/non-prosecution, which were hidden and used to force default (Motion at 3, 12), supporting defenses of no causation (default due to government-induced sabotage, not scheme, Compl. ¶¶ 2-5) and lack of fraudulent intent (quotes not knowingly inflated by Defendant Hild, Compl. ¶¶ 1-4).

• Deposition and documents from Mr. Kirk Evans: To address his interface with Flagstar and Mr. Rohr as an unwitting pawn in sabotage by altering bond repo tracking settings to starve cash, directed by government cooperator, Mr. Rohr, in exchange for leniency (Motion at 12),

3

supporting defenses of no causation (failure due to government-induced sabotage, not inflated marks, Compl. ¶¶ 3-5) and no material misrepresentation (communications and settings altered secretly, Compl. ¶¶ 3-4).

• Deposition and documents from Mr. Chris Krupa (and IDC/ICE): To explore IDC bond valuations and SEC contacts, revealing that IDC asked Live Well to supply bond valuations, that it was commonplace industry practice at the time for IDC to rely on single broker quotes, and that IDC was secretly under SEC/government control for over a year and a half (per recently obtained documents showing an SEC subpoena) until compelled to stop pricing Live Well's bonds with intent to sabotage, not for the false reasons Mr. Krupa conveyed to Mr. Hild (Motion at 12), supporting defenses of lack of fraudulent intent (valuations eliminated and/or set externally under government influence, not by Defendant Hild, Compl. ¶ 2) and no material misrepresentation (process aligned with industry norms, sabotage not misrepresentation, Compl. ¶¶ 2-4).

• Deposition and documents from SEC and its Staff (Greg Smolar, Reid Muoio, Jeffrey Leisure, Jay Clayton): To obtain communications on events leading to default (Motion at 13), supporting defenses of no causation (losses from regulatory pressures, not scheme, Compl. ¶¶ 5, 64-69) and lack of intent (actions in good faith amid external influences).

• Deposition and documents from Dani James: To address her role as proxy for Mr. Foster in secret government dealings to set conflicting Bloomberg bond prices in exchange for leniency/non-prosecution of Mr. Foster (Motion at 13), supporting defenses of no material misrepresentation (meetings and compliance manipulated externally, Compl. ¶ 2) and no causation (default from hidden interference, not scheme, Compl. ¶¶ 4-5).

4

• Deposition and documents from Wedbush Securities and its Staff (Scott Skyrym, Jim Kearney, David Weaver), Industrial and Commercial Bank of China, Mirae Asset Securities, Mizuho Bank, Customers Bank: To explore undisclosed communications with the SEC and various lenders exerting pressure to intentionally cause Live Well to fail, and the resultant bond trades and repo agreements (Motion at 13), supporting defenses of no causation (failure and trades driven by external pressure, not Defendant Hild's scheme, Compl. ¶¶ 3-5) and lack of intent (no coordinated scheme, actions influenced by external forces).

• Deposition and documents from Flagstar Bank and its executive management (Jim Ciroli CFO, Alessandro DiNello CEO, Toby Thomas CIO, Lee Smith COO): To obtain decision-making info per Mr. Marsh's deposition (Motion at 14), supporting defenses of no reliance (Flagstar knew risks, Compl. ¶¶ 3-4) and no causation (internal decisions caused losses).

• Deposition and documents from Helios Strategic Advisors LLC (Oliver Dupiton, Tol Ho): To verify that Oliver Dupiton did not submit bond quotes to Bloomberg as claimed, indicating Bloomberg's bond prices relied solely on a single broker quote from Dan Foster, who supplied artificially low and conflicting marks to curry favor with the government, conflicting with Bloomberg's disclosures (Motion at 14), supporting defenses of no material misrepresentation (Bloomberg marks misattributed and unreliable, Compl. ¶ 2) and lack of fraudulent intent (no manipulation by Defendant Hild if marks were externally manipulated, Compl. ¶¶ 3-4).

• Deposition and documents from Bloomberg's Lawrence "Larry" Mattera Jr.: To address correspondence on valuations, revealing reliance on Dan Foster's broker quotes (possibly without Mattera's knowledge of Foster's SEC influence) and not other broker quotes, demonstrating IDC's valuations were not inflated by Defendant Hild compared to Bloomberg's

5

marks, but rather Bloomberg's bond valuations were manipulated by Foster, a government cooperator supplying conflicting valuations to cause Live Well to fail (Motion at 14), supporting defenses of no fraudulent intent (postings not inflated by Defendant Hild, but externally manipulated by the Foster, Compl. ¶¶ 2-4) and no causation (discrepancies due to Foster's government-driven actions, not Defendant Hild's conduct, Compl. ¶¶ 3-5).

• Deposition and documents from David Carickhoff, Live Well Trustee: To access emails and corporate documents (Motion at 14), supporting defenses of lack of intent (records show good faith, Compl. ¶¶ 1-4) and no misrepresentation (full disclosures made).

• Deposition and documents from William Donnelly, Tom McGonigle, Kevin Muldowney: To explore advice relied upon (Motion at 15), supporting defense of reliance on counsel (actions advised as compliant, Compl. ¶¶ 3-4).

• Deposition and documents from Xavier Donaldson: To address recent government threats to Mr. Stumberger (made via Mr. Donaldson) not to discuss corruption claims related to his guilty plea in the criminal case, which prejudices Defendant Hild's defense in this civil Flagstar case by foreclosing key testimony (Motion at 15), supporting defenses of no causation (external government pressures affected outcomes and default, Compl. ¶ 5) and lack of fraudulent intent (threats indicate external influences, not scheme by Defendant Hild, Compl. ¶¶ 1-4).

• Deposition and documents from SDNY and its staff: To obtain communications re: threats and allegations (Motion at 15), supporting defenses of no causation (proceedings influenced externally, Compl. ¶¶ 1-5) and no intent.

6

This is not broad-ranging; it targets sources essential for the above defenses, which were untested due to Mr. Brown's inaction.

**2. Flagstar's Reliance on the Criminal Case Does Not Bar Civil Discovery, and Its "Finality" Claim Is Inaccurate.**

Flagstar repeatedly invokes the criminal case's "final judgment" to argue discovery is unnecessary and improper (Opp. ¶¶ 2, 8), yet uses criminal testimony to support its civil claims. This inconsistent posture—treating the criminal record as both dispositive and untouchable—is unfair. Civil discovery is warranted to test evidence Flagstar invokes here, such as valuations and disclosures. Moreover, the criminal case is not final: Defendant Hild continues pursuing ongoing appellate proceedings, including a pending en banc petition, and forthcoming rehearing,[2] certiorari, and habeas which the Second Circuit itself proposed for ineffective assistance of counsel (including but not limited to Mr. Dusing's failure to pursue the Dan Foster/Bloomberg bond price fixing issue). Regardless, finality in a related criminal matter does not preclude targeted civil inquiry into overlapping facts. See Fed. R. Civ. P. 26(b)(1) (discovery relevant to claims/defenses).

**3. The Timeline and Procedural Posture Support Reopening Discovery for 180 Days Due to Prior Counsel's Deficiencies, Not Defendant Hild's Neglect.**

Flagstar claims the timeline refutes good cause, asserting issues with Mr. Brown arose post-discovery (Opp. ¶ 3). This ignores evidence that Mr. Brown's eldercare issues (detailed in Response to Mr. Brown's Motion to Withdraw as ECF No. 144 Exhibit B, subexhibit D)

---

[2] The 2nd Circuit recently issued a corrected opinion, triggering Mr. Hild's right to petition for rehearing and en banc again, since the original opinion was superseded.

7

overlapped with the discovery period, preventing diligent action. Mr. Brown represented discovery was proceeding (e.g., requesting questions from Defendant Hild in Oct./Nov. 2023, Mr. Brown's Motion to Withdraw as ECF No. 144 Exhibit B, subexhibit E), but none occurred beyond a single Flagstar 30(b)(6) deposition (Opp. ¶ 5) and that of Mr. Bowman. Defendant Hild diligently relied on these assurances; upon learning otherwise after receiving files in Sept. 2025 (delayed despite May 2025 request), he promptly filed this Motion as the Court directed. This case's posture—awaiting trial after summary judgment denial (ECF No. 122)—favors 180 days of discovery to ensure a fair trial, given the lack of prior effort. See Leary v. Daeschner, 349 F.3d 888  (6th Cir. 2003).

**4. Defendant Hild Was Kept in the Dark and Misled by Mr. Brown**

Flagstar argues Defendant Hild's involvement (e.g., Mr. Hild providing deposition questions to Mr. Brown but which were never asked because the depositions never took place) somehow makes Mr. Hild's claims' disingenuous (Opp. ¶ 4). To the contrary, this shows diligence: Defendant Hild trusted Mr. Brown's[3] representations that discovery was active, only discovering his deficiencies after the fact. Clients are not expected to micromanage counsel. See *Maples v. Thomas*, 565 U.S. 266 (2012). Flagstar's claim that prior subpoenas in the criminal cases (Opp. ¶

---

[3] It bears mentioning that Mr. Brown became involved with Mr. Hild in the Delaware civil bankruptcy case only because of Mr. Dusing's (and his associate, Jason Kuhlman) improper solicitation of Mr. Hild when Mr. Hild already had counsel. Defendant Hild had no preexisting relationship with Mr. Brown. In fact, Defendant Hild never spoke with Mr. Brown until Mr. Dusing was suspended from practicing law and Mr. Kuhlman had to step aside as a result (given his affiliation with Mr. Dusing). Mr. Brown then voluntarily inserted himself into this civil Flagstar Bank case, making an appearance. It was Mr. Brown who drafted the Motion to Transfer Venue in this case for Mr. Hild and then entered an appearance shortly thereafter. This was due to Mr. Brown's belief that this Flagstar case should have been consolidated with the redundant and duplicative Delaware Bankruptcy case, and that Flagstar Bank was improperly dually litigating the same claims as creditor of the Bankruptcy estate, with Flagstar Bank acting as the movant who forced Live Well involuntarily into bankruptcy in Delaware in the first place. It seems Mr. Brown was surprised that the transfer and consolidation wasn't granted, and then Mr. Brown completely dropped the ball on this Flagstar case and the Delaware Bankruptcy case, doing almost nothing thereafter, given the overwhelm of two duplicative cases and his conflicting elder care responsibilities which manifested simultaneously.

8

5) is blatantly false, and knowingly so. Mr. Dusing obtained zero documents under subpoena in the criminal case.[4] Secondly while Mr. Brown issued a handful of subpoenas in the bankruptcy case, he did not follow through on them once the parties evaded, failed to produce, or worse yet, Mr. Brown failed to schedule and hold depositions. Regardless, depositions were not held in this Flagstar case, and the discovery is non-duplicative. Lastly, Flagstar makes an absurd, circular claim that somehow Mr. Hild's recent May-September 2025 pro se filings in the bankruptcy case, after Mr. Brown's failures were identified (and has been in damage control mode just as he is in this case because of Mr. Brown's failures), somehow implies that Mr. Hild should now be barred from obtaining evidence caused by Mr. Brown's past failure to conduct discovery (in both cases). The only reason Mr. Hild has needed to make these recent pro se filings in the bankruptcy case is because of Mr. Brown's failure to conduct discovery. Mr. Hild now has to step in and do what he was falsely led to believe Mr. Brown had already been doing all along, but hadn't; now that Mr. Hild has the virtually empty case files from Mr. Brown, Mr. Hild has almost no evidence whatsoever for his defense.

**5. The addition of Mr. Stumberger and other developments after the close of discovery materially changes the case and requires relief.**

As explained in the Motion and subsequent filings, Mr. Stumberger has been brought back to the case as a codefendant (out of default) after discovery closed. This is not a technicality — it materially alters the landscape of the litigation because (a) he has knowledge and documents

---

[4] If Mr. Dusing did obtain any documents, Mr. Dusing has not shared them with Mr. Hild, nor his criminal counsel, Mr. Brian Jacobs. Mr. Hild can find no records whatsoever in his possession of subpoena related production obtained by Mr. Dusing. As this Court knows, Mr. Dusing was suspended from practicing law, on a remedial basis no less as a threat to the public, based upon Mr. Hild's bar complaint (and others) detailing prescription drug abuse as a substitute for his cocaine addiction, fraudulent theft of funds in his scheme to improperly solicit Mr. Hild, and his violent physical threats. Flagstar's attempt to make Mr. Hild responsible for the despicable actions of Mr. Dusing's misconduct and Mr. Brown's deception is reprehensible.

9

central to the valuation and communications issues, and (b) his presence as a defendant means the parties' trial strategies and defenses cannot fairly proceed without affording him and Mr. Hild the opportunity to take reasonable discovery. Flagstar's insistence that there is no need to revisit discovery after such a material change is untenable.[5]

## 6. The Proposed 180-Day Discovery Causes No Undue Prejudice to Flagstar.

Flagstar claims prejudice from delays in collecting $13M (Opp. ¶ 6), but this case has already endured stays (e.g., due to criminal proceedings), the government is already collecting on its judgement, and Mr. Hild has been financially wiped out with nothing incremental to offer Flagstar by way of collection even if it were to obtain a judgement in this case. A 180-day period, as originally requested, is necessary to complete depositions and document production for 12 critical sources, given the prior lack of effort. This minimal impact, with a proposed cap of 12 depositions and prioritized scheduling, far less than the "significant additional resources" for new claims. Denying discovery prejudices Defendant Hild more, risking an unfair trial.

## 7. Waiver of Privilege Is Irrelevant to This Motion.

Flagstar notes waiver of attorney-client privilege via Motion attachments (Opp. ¶ 7). This is a red herring; the Motion preserved confidentiality (footnote 1), and waiver (if any) does not affect good cause for discovery.

---

[5] Flagstar Bank aggressively seeks to arrange a sham trial without the Defendant having access to evidence because that's the easiest way to prevail on their claims—by hiding the truth. Similarly, this is why Flagstar's modus operandi has been to attempt to pursue summary judgements, rather than an actual trial based upon facts and the law with the Defendant actually having access to evidence.

10

## III. CONCLUSION

For the foregoing reasons, good cause exists to grant Defendant Hild's Motion for 180 days of limited additional discovery under Rule 16(b)(4). Defendant Hild respectfully requests the Court enter an order accordingly.

Respectfully submitted,

Michael C. Hild

Date: April 16, 2026

11

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, a true copy of the foregoing was served via email to Mr.

Joseph Shannon and Mr. Darren Stumberger and via the Court's pro se upload system.

Michael C. Hild

Pro Se Defendant

2302 E Marshall Street

Richmond, VA 23223

804.306.4314

Date: April 16, 2026

12