# EXHIBIT B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 24, 2020

**By Electronic Mail**

The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> **Re:** **United States v. Darren Stumberger,**
> **19 Cr. 608 (JPO)**

Dear Judge Oetken:

The defendant in the above-referenced matter entered a guilty plea on August 27, 2019 before the Honorable Katharine H. Parker, United States Magistrate Judge for the Southern District of New York. Enclosed please find for your consideration a proposed Order accepting the defendant's plea.

Respectfully submitted,
GEOFFREY S. BERMAN

United States Attorney

By:   \_\_\_\_/s/_____
Scott Hartman
Assistant United States Attorneys
(212) 637-2357

Cc:   Robert Stern, Esq. (by email)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X
                                        :
 UNITED STATES OF AMERICA               :        **ORDER**
                                        :
            - v. -                      :        19 Cr. 608 (JPO)
                                        :
 DARREN STUMBERGER,                     :
                                        :
                Defendant.              :
                                        :
- - - - - - - - - - - - - - - - - -X

WHEREAS, with the defendant's consent, his guilty plea allocution was made before a United States Magistrate Judge on August 27, 2019;

WHEREAS, a transcript of the allocution was made and thereafter was transmitted to the District Court; and

WHEREAS, upon review of that transcript, this Court has determined that the defendant entered the guilty plea knowingly and voluntarily and that there was a factual basis for the guilty plea;

IT IS HEREBY ORDERED that the defendant's guilty plea is accepted.

SO ORDERED:

Dated:    New York, New York

          _____, 2020


                              _____
                              THE HONORABLE J. PAUL OETKEN
                              UNITED STATES DISTRICT JUDGE

Xj8rdstup

SEALED - DO NOT DOCKET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,                      New York, N.Y.

              v.                               19 Cr. 0608(JPO)

DARREN STUMBERGER,

              Defendant.

------------------------------x

                                        August 27, 2019
                                        11:54 a.m.

Before:

                HON. KATHARINE H. PARKER,

                                        District Judge

                      APPEARANCES

GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York
BY:   SCOTT HARTMAN
      JORDAN ESTES
          Assistant United States Attorneys

ORRICK HERRINGTON & SUTCLIFFE LLP
      Attorneys for Defendant
BY:   ROBERT M. STERN

Xj8rdstup

SEALED - DO NOT DOCKET

THE CLERK:  Calling case 19 Crim. 608, U.S. versus Stumberger.

Counsel, please make your appearances for the record.

MR. HARTMAN:  Good morning, your Honor.  Scott Hartman and Jordan Estes for the government.

MS. ESTES:  Good morning, your Honor.

MR. STERN:  Good morning, your Honor.  Robert Stern, Orrick Herrington & Sutcliffe, on behalf of Mr. Stumberger.

THE COURT:  Good morning.

Good morning, Mr. Stumberger.  I'm Judge Parker.

And I understand that you wish to plead guilty to five counts of a criminal Information.  Is that correct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Before we get started, I am going to ask my courtroom deputy to swear you in.

(The defendant was sworn)

THE COURT:  Mr. Stumberger, you have now been placed under oath.  This means that any statements that you make here may be used against you by the government in a prosecution for perjury or for making false statements.

Do you understand that?

THE COURT:  Yes, your Honor.

MR. HARTMAN:  Your Honor, I just want to flag -- the Court may be aware of this -- this is Mr. Stumberger's first appearance.  I just want to make sure the Court is aware of it.

Xj8rdstup

SEALED - DO NOT DOCKET

THE COURT:  Yes.

MR. HARTMAN:  For Rule 5 purposes.

THE COURT:  Yes.

MR. HARTMAN:  Thank you.

THE COURT:  I am.  Thank you.

So the document that contains the charges to which you indicated that wish to plead guilty is called an information. It charges you in Count One with participating in a conspiracy to commit securities fraud, in violation of Title 18 of the United States Code, Section 371.

Count Two charges you with conspiracy to commit wire fraud, in violation of Title 18 of the United States Code, Sections 1344 and 3571.

Count Three charges you with securities fraud, in violation of 15 U.S.C. Section 78j(b) and 78ff, Title 17 of the Code of Federal Regulations Section 240.10b-5, and Title 18 of the United States Code Section 2.

Count Four charges you with wire fraud, in violation of 18 U.S.C. Sections 2 and 1343.

And, finally, Count Five charges you with bank fraud, in violation of Title 18 of the United States Code, Section 1344.

Counsel, have you had a chance to review the Information with your client, and does he waive its public reading?

Xj8rdstup

SEALED - DO NOT DOCKET

MR. STERN:  Yes, your Honor.  We have had an opportunity to review the Information with Mr. Stumberger, and he waives.

THE COURT:  OK.  Before we go forward with the plea, I am going to explain constitutional rights that you have.

You have the right to remain silent.  You are not required to make any statements.  Even if you've already made statements to the authorities, you are not required to make any further statements.  Anything that you do say can be used against you.

You have the right to be released, either conditionally or unconditionally, pending trial unless I find that there are no conditions that would reasonably assure your presence at future court appearances or the safety of the community.

If you are not a U.S. citizen, you have the right to request that a government attorney or law enforcement official notify the consular officer from your country of origin that you have been arrested and in some cases the U.S. government has to give that notice regardless.

And you have the right to be represented by an attorney during all court proceedings and during all questioning by the authorities, and you have the right to hire your own lawyer.  If you cannot afford a lawyer, the Court will appoint one for you.

Xj8rdstup

SEALED - DO NOT DOCKET

Do you understand all of these rights as I have just explained them?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, I also want to provide a little bit of explanation about the document that contains the charges against you.

The Information was issued by the United States Attorney and not a grand jury.  Under the United States Constitution, you have a right to be charged by an indictment which is issued by a grand jury.  A grand jury is a group of 23 ordinary citizens who are called to jury service to hear the government's evidence in criminal cases and decide whether that evidence is sufficient to justify bringing you to trial.  In order to return an indictment, at least 12 of the grand jurors must vote for the indictment, finding that there is probable cause to believe that an offense was committed and that you committed it.

If you give up your right to have the charges against you presented to the grand jury, the case proceeds against you based on the Information just as if you had been indicted.

Do you understand this?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, I have a copy of a waiver form that you signed.  It is dated today.  This is a Waiver of Indictment form, and I want to make sure that you signed this voluntarily.

Xj8rdstup
SEALED - DO NOT DOCKET

Did you sign it voluntarily?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you talk with your lawyer before you signed it about the advantages and disadvantages of waiving indictment?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anybody made any promises to you to get you to waive indictment?

THE DEFENDANT: No, your Honor.

THE COURT: Has anybody threatened you to get you to sign a Waiver of Indictment?

THE DEFENDANT: No, your Honor.

THE COURT: And do you still wish to give up your right to be charged by the grand -- to have the charges considered by a grand jury?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. The record should reflect that Mr. Stumberger has now waived indictment. So, I'm going to deem you to have been arraigned, and we will now proceed with the plea.

I have another document that you've signed that is dated today. It is entitled "Consent to Proceed Before a United States Magistrate Judge on a Felony Plea Allocution." And what this form says is that you know you have the right to have your plea taken by a U.S. district judge but, instead,

Xj8rdstup

SEALED - DO NOT DOCKET

that you're agreeing to have your plea taken by me, a magistrate judge. I have the authority to take your plea, with your consent, and you are entitled to all the same rights and protections as if you were before the District Judge.

Before you signed this consent form, did your lawyer explain it to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you sign it voluntarily?

THE DEFENDANT: Yes, your Honor.

THE COURT: And do you still wish to proceed before me today?

THE DEFENDANT: Yes, your Honor.

THE COURT: Your consent is accepted.

I would like to explain a little bit more about the plea proceedings. I'm going to ask you various questions. Some are personal in nature. Others are about the crimes to which you've indicated you wish to plead guilty. I'm also going to review the consequences of pleading guilty to the crimes and various rights you'll be giving up by pleading guilty.

The purpose of these questions is to make sure that you understand your rights and that you are voluntarily pleading guilty of your own free will because you are in fact guilty of the crimes to which you are pleading guilty and not for some other reason.

Xj8rdstup

SEALED - DO NOT DOCKET

Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  What is your full name?

THE DEFENDANT:  Charles Darren Stumberger.

THE COURT:  How old are you?

THE DEFENDANT:  46.

THE COURT:  Are you a United States citizen?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  The reason I ask that is because there are serious immigration consequences to noncitizens for pleading guilty to a felony.

How far did you go in school?

THE DEFENDANT:  I received a master's degree.

THE COURT:  In what?

THE DEFENDANT:  Business.

THE COURT:  And are you currently or have you recently been under the care of a doctor or mental health professional?

THE DEFENDANT:  Just psychologist/psychiatrist type of doctors.

THE COURT:  Is that -- have you ever been hospitalized for mental illness?

THE DEFENDANT:  No.

THE COURT:  And are you taking any medications prescribed by a psychiatrist?

THE DEFENDANT:  Just for stress and anxiety, those

Xj8rdstup
SEALED - DO NOT DOCKET

types of --

THE COURT:  Do those medications interfere with your ability to remember or think clearly?

THE DEFENDANT:  No.

THE COURT:  All right.  So your mind is clear today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you have any condition that affects your ability to see or to hear?

THE DEFENDANT:  No, your Honor.

THE COURT:  Do you have any condition that affects your ability to make judgments and decisions for yourself?

THE DEFENDANT:  No, your Honor.

THE COURT:  Have you ever been treated or hospitalized for alcoholism or drug addiction?

THE DEFENDANT:  No, your Honor.

THE COURT:  And as you sit here today, are you under the influence of any mind-altering drug or alcohol?

THE DEFENDANT:  No, your Honor.

THE COURT:  How are you feeling physically today?

THE DEFENDANT:  Fine.

THE COURT:  And do you understand what's happening in this proceeding?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Does either counsel have any objections to Mr. Stumberger's competence to plead at this time?

Xj8rdstup
SEALED - DO NOT DOCKET

MR. HARTMAN:  No, your Honor.

MR. STERN:  No, your Honor.

THE COURT:  I'm now going to explain certain constitutional rights that you have, and these are rights that you will be giving up if you enter a guilty plea.  So, please listen carefully to what I'm about to say.  If there is anything you don't understand, stop me and I'll explain it further or give you a chance to talk with your lawyer.  OK?

Under the Constitution and laws of the United States, you have a right to plead not guilty to the charges contained in the Information.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If you plead not guilty, you would be entitled under the Constitution to a speedy and public trial by a jury of the charges against you.  At the trial, you would be presumed innocent, and the government would be required to prove you guilty beyond a reasonable doubt before you could be found guilty.  You could not be convicted unless a jury of twelve people agreed unanimously that you are guilty beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  If you decided to go to trial, at the trial and at every stage of your case, you would have the right to be represented by a lawyer.  If you could not afford one, as

Xj8rdstup

SEALED - DO NOT DOCKET

I mentioned earlier, a lawyer would be appointed to represent you at the government's expense. And even if you retained your own counsel, if you ran out of money an attorney would be appointed to continue to represent you all the way through trial. So, your decision to plead guilty should not depend on whether or not you can afford a lawyer.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: During a trial, the witnesses for the prosecution would have to come to court and testify in your presence, where you could see and hear them, and your lawyer could cross-examine them. If you wanted, your lawyer could offer evidence in your defense. You would also be able to use the Court's power to compel witnesses to come to court to testify in your defense even if they didn't want to.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: At trial, you would have the right to testify in your own defense if you wanted to, but you would also have the right not to testify. If you chose not to testify, that could not be used against you in any way. No inference or suggestion of guilt would be permitted from the fact that you decided not to testify.

Do you understand?

THE DEFENDANT: Yes, your Honor.

12

Xj8rdstup
SEALED - DO NOT DOCKET

THE COURT:  If you were convicted at trial, you would have the right to appeal that verdict to a higher Court.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And as I said before, you have the right to plead not guilty.  So even right now, as you sit here today for purposes of entering a guilty plea, you can change your mind and persist in a not guilty plea and go to trial.  But if you do plead guilty and your plea is accepted, you are going to give up the right to a jury trial and all the other rights that go with it that I have just described.

Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Finally, if you do plead guilty, you are also giving up the right not to incriminate yourself, and I am going to ask you questions about what you did in order to satisfy myself that you are actually guilty of the crimes to which you are pleading guilty.  So, by pleading guilty, you will be admitting to your factual as well as your legal guilt.

Do you understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I'm now going to review the charges against you and the consequences of pleading guilty to them.

Count One charges you with participating in a conspiracy to commit securities fraud, in violation of Title 18

Xj8rdstup

SEALED - DO NOT DOCKET

of the United States Code, Section 371.

I am going to ask the Assistant U.S. Attorney to state the elements of this charge.

If you pled not guilty and went to trial, the burden would be on the government to prove each and every element of the charge beyond a reasonable doubt in order for you to be convicted and found guilty.

Go ahead.

MR. HARTMAN: Your Honor, there are three elements to the conspiracy charge. The first is that the conspiracy charged in the count had existed, that is, that there was an agreement or understanding between two or more people to commit this securities fraud offense; second, the defendant knowingly and wilfully became a member of the conspiracy; and, third, that a member of the conspiracy and the defendant coconspirator committed an overt act in furtherance of the conspiracy's objectives.

Judge, here the object of the conspiracy was substantive securities fraud. Would you like me to tell the Court the elements of that as well?

THE COURT: We have another charge of securities fraud, so you can go through the elements of that. I believe that is Count Three.

MR. HARTMAN: That's right, your Honor.

THE COURT: So, we'll go through those elements.

Xj8rdstup

SEALED - DO NOT DOCKET

MR. HARTMAN: So I'll wait until that time. OK.

THE COURT: -- at that time.

OK. So, I'm going to go over the maximum possible penalties for this crime of conspiracy to commit securities fraud. The "maximum" means the most that could possibly be impose. It does not mean that's what you necessarily would receive, but by pleading guilty you're exposing yourself to the possibility of receiving any combination of punishments up to the maximum I'm about to describe. OK?

The maximum term of imprisonment for this offense is five years, which could be followed by up to three years of supervised release.

Now, "supervised release" means after you are released from prison, you may be subject to be supervision by the Probation Department. If you are placed on supervised release and then violate a condition of that release, the District Judge can revoke the term of supervised release and return you to prison without giving you credit for time served on post-release supervision.

In addition to these restrictions on your liberty, the maximum possible punishment for this crime includes a fine which is the greatest of $250,000, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself.

The Court is also required to impose a mandatory

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Xj8rdstup
SEALED - DO NOT DOCKET

special assessment, or fine, of $100.

Count Two charges you with conspiracy to commit wire fraud, in violation of Title 18 of the United States Code, Section 1349. And this allegedly occurred between in or about September of 2015 through March 2019 in this district and elsewhere.

Mr. Hartman, can you state the elements of this crime, please.

MR. HARTMAN: Sure, your Honor.

There are two elements to this crime. The first is that on or about the dates charged in the Information, the conspiracy in question existed. Here, it is wire fraud and bank fraud. And the second is that the defendant knowingly and willfully became a member of the conspiracy.

THE COURT: Thank you.

The maximum term of imprisonment for this offense is 30 years in prison, and it also -- that prison term could be followed by up to five years of supervised release.

This crime also carries financial penalties. The maximum fine is a million dollars, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself.

The Court is also required to impose a mandatory special assessment of $100.

Count Three charges you with securities fraud, in

Xj8rdstup
SEALED - DO NOT DOCKET

violation of Title 15 of the United States Code, Sections 78j(b) and 78ff, Title 17 of the Code of Federal Regulations Section 240.10b-5, and Title 18 of the United States Code, Section 2, and also Section -- hold on, 3571. I'm sorry. I'm misreading this. Section 3571 deals with the fine for this.

All right. So I'm going to ask Mr. Hartman to again state the elements of this charge, securities fraud.

MR. HARTMAN: Your Honor, there are three elements. The first is that in connection with the purchase or sale of securities, the defendant either employed a device, scheme or artifice to defraud, or made an untrue statement of material fact, or omitted to state a material fact which made what was said under the circumstances misleading, or engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon a purchaser or a seller of securities. The second is that the defendant acted knowingly, willfully and with an intent to defraud, and third is that the defendant knowingly used, or caused to be used by any means -- used any means or instrument of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.

THE COURT: Thank you.

And as alleged in the Information, this crime relates to conduct in or about the same time period, September 2015 to March 2019, in connection with the scheme to defraud various

Xj8rdstup
SEALED - DO NOT DOCKET

counterparties of Live Well Financial in a repurchase agreement transaction by misrepresenting the value of certain bonds to be sold as part of the transaction and inducing other parties -- counterparties to purchase them at inflated prices.

The maximum term of imprisonment for this offense is 20 years, and that could be followed by three years of supervised release. And it also carries a fine. The maximum fine is $5 million or twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to persons other than yourself, and it also carries the hundred-dollar special assessment that is mandatory.

Count Four charges you with wire fraud, in violation of Title 18 of the United States Code, Sections 2 and 1343, again, related to the same conduct -- misrepresenting the value of certain bonds to be sold as part of the Live Well transactions.

Mr. Hartman, can you state the elements of this charge?

MR. HARTMAN: Yes, your Honor.

There are three elements. The first is that there was a scheme or an artifice to defraud others of money or property, or to obtain money or property by materially false or fraudulent pretenses. The second is the defendant knowingly and willfully participated in the scheme with knowledge of its fraudulent nature. And the third is that in the execution of

Xj8rdstup

SEALED - DO NOT DOCKET

the scheme, the defendant used, or caused to be used, a means or facility of interstate wires.

THE COURT: Thank you.

All right. The maximum sentence for this charge is 20 years in prison which could be followed by three years of supervised release, and it also carries a fine. The maximum fine is $250,000, twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to other persons, whichever is greatest, and the hundred-dollar mandatory special assessment.

Count Five charges you with bank fraud, in violation of Title 18 of the United States Code, Section 1344.

Mr. Hartman, can you state the elements of this charge?

MR. HARTMAN: Yes, your Honor.

The first is that there was a scheme to obtain money or funds that were under the custody of a bank. The second is that the defendant executed the scheme with the intent to obtain that money, or participated in the scheme with that intent, and the third is that the bank in question had its deposits insured by the FDIC.

THE COURT: All right. Thank you.

The maximum term of imprisonment for this last crime is 30 years in prison to be followed by five years of supervised release. The maximum fine is $1 million, or twice

Xj8rdstup

SEALED - DO NOT DOCKET

the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to other persons, whichever is greatest, and also the hundred-dollar mandatory special assessment.

The total maximum sentence of incarceration on all of these counts combined is 105 years in prison and up to 19 years of supervised release.

And the Court also has authority to require you to pay restitution to any victims of these crimes in an amount that the Court decides is required to compensate them for their injuries, and, similarly, the Court may order forfeiture of any money and property used or derived from these crimes. And by pleading guilty, you are agreeing to make restitution in any amount ordered by the Court, and agreeing to the forfeiture allegations that relate to Counts One through Five of the Information and agreeing to forfeit any money and property obtained from the crimes to which you are pleading guilty.

Now, forfeiture is in addition to any fine, restitution, cost of imprisonment, or other penalty the Court may impose.

Now, as I mentioned earlier, if you are not a citizen of the United states, a guilty plea may have adverse consequences for your ability to remain in the United States, including removal, deportation, denial of citizenship, and denial of admission to the United States in the future. And regardless of any advice you may have received from your lawyer

Xj8rdstup

SEALED - DO NOT DOCKET

or others concerning immigration consequence, you would still be bound by your guilty plea.

A guilty plea also may result in the loss of certain valuable civil rights, to the extent you have them today or could obtain them in the future. These include the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm.

Do you understand everything I have just explained?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand the charges against you and the consequences of pleading guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you had enough time to talk with your lawyer, Mr. Stern, about the charges against you and how you wish to plead?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you had enough time to talk with your lawyer about the consequences of pleading guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you satisfied with your lawyer's representation of you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, I have a written plea agreement between you and the government. The front page is dated August 20, 2019, but it bears your signature dated today.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Xj8rdstup
SEALED - DO NOT DOCKET

Is this in fact your signature on the plea agreement?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I'm holding up a copy.  I don't know if the copy that you have has a signature.

Did you read the plea agreement before you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did your lawyer explain the terms and conditions of the plea agreement to you before you signed it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I'm going to review a few provisions of it today.

The plea agreement refers to the possibility that the government may advise the Sentencing Judge by letter that you have given the government substantial cooperation, and that could lead to a reduction in your potential prison sentence.

Do you understand that the plea agreement does not absolutely require the government to do this and provide that letter?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that the government may choose not to submit such a letter based on its own assessment of your compliance with the plea agreement and the extent of your cooperation?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I also want to make sure that you

Xj8rdstup
SEALED - DO NOT DOCKET

understand that the Court and the Probation Department are not bound by any recommendations from the U.S. Attorney, and the Sentencing Judge is free to do, and in fact obliged to do, his own computation of the appropriate sentencing range in your case and has discretion to give you a prison sentence anywhere up to the maximum sentence that I told you about earlier. Do you understand this?

THE DEFENDANT: Yes, your Honor.

THE COURT: In determining an appropriate sentence, the Court will consider the Sentencing Guidelines, possible departures under those guidelines, and other sentencing factors set forth in Title 18 of the United States Code, Section 3553(a). In addition, the Court will consider a presentence report prepared by the Probation Department. You'll get a chance to look at that report and challenge any facts in it before your sentence. Ultimately, the District Judge will determine your sentence based on all of these factors that I've explained and that that sentence may be more severe than you expect, but you will still be bound by your guilty plea.

Do you understand that.

THE DEFENDANT: Yes, your Honor.

THE COURT: Under the plea agreement, the U.S. Attorney is agreeing that it won't prosecute you further criminally except with respect to criminal tax violations for your participation in the crimes charged in the Information,

Xj8rdstup
SEALED - DO NOT DOCKET

but the plea agreement does not bar the use of that conduct at sentencing.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now, under the terms of the plea agreement, you are agreeing that you are not going to appeal your conviction directly or through a petition, through a writ of habeas corpus, on the ground that the government failed to produce certain information that might have been helpful to you at trial.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Also, I want to make sure that you understand that the plea agreement does not bind any prosecution office other than U.S. Attorney's Office for the Southern District of New York.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are there any other provisions of the plea agreement that the government would like me to review with Mr. Stumberger?

MR. HARTMAN:  No, your Honor.  Thank you.

THE COURT:  Are there any other provisions of the plea agreement that, Mr. Stern, you would like me to review with your client?

MR. STERN:  No, your Honor.

THE COURT:  Mr. Stumberger, apart from what's in the plea agreement itself, have any promises been made to you to

Xj8rdstup

SEALED - DO NOT DOCKET

influence you to plead guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Have any promises been made to you concerning the actual sentence you will receive?

THE DEFENDANT:  No, your Honor.

THE COURT:  Have you been threatened in any way or coerced into pleading guilty?

THE DEFENDANT:  No, your Honor.

THE COURT:  Now that you've been advised of the charges against you, the possible penalties that you face, and the rights you are giving up, do you still wish to plead guilty to the crimes charged in the Information?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Is this plea voluntary and of your own free will?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  With respect to Count One, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  And with respect to Count Two, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  With respect to Count Three, how do you plead?

THE DEFENDANT:  Guilty.

Xj8rdstup
SEALED - DO NOT DOCKET

THE COURT:  With respect to Count Four, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  And with respect to Count Five, how do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  Are you pleading guilty because you in fact committed these offenses?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Can you tell me in your own words what you did that makes you guilty of these five crimes?

THE DEFENDANT:  Yes, your Honor.

Live Well Financial, my previous employer, purchased for investment purposes interest-only bonds that were collateralized by reverse mortgages to fund those purchases. Live Well entered into repurchase transactions and warehouse lines of credit with commercial banks.  It was my understanding that the banks used what they believed to be independent valuations from IDC to determine the value of the collateral Live Well was posting, how secure their extension of credit was, and how much they were willing to lend to Live Well.

From 2015 until its bankruptcy in 2019, Live Well, at the direction of its CEO Michael Hild, submitted inflated valuations to IDC knowing that IDC was publishing those valuations in its database verbatim and expecting that Live

Xj8rdstup

SEALED - DO NOT DOCKET

Well's lenders would rely on those inflated valuations in making lending decisions. Live Well's knowing publication of inflated valuations caused lenders to be less secure in their extension of credit to Live Well than they believed.

I was aware that Live Well was doing this. I knew that it was wrong for Live Well to submit valuations that did not reflect the market value of the interest-only bonds in Live Well's portfolio, but I nevertheless provided support for the effort from 2015 through the middle of 2017.

THE COURT: I have a few questions for you regarding what you've just told me.

In Counts One and Two, you are charged with participating in a conspiracy, a conspiracy to commit the securities fraud and to commit wire fraud.

Did you enter into an agreement, or did you have an informal agreement with another person concerning this activity?

THE DEFENDANT: No, your Honor.

THE COURT: Well, you mentioned the --

MR. STERN: Your Honor, if we may?

THE COURT: Yes.

MR. STERN: I think Mr. Stumberger did not hear your question.

THE COURT: OK.

(Pause)

Xj8rdstup
SEALED - DO NOT DOCKET

MR. STERN: I'm sorry, your Honor. I think Mr. Stumberger didn't hear the question.

THE COURT: OK. I am going to repeat the question, Mr. Stumberger.

One of the elements of a conspiracy charge is that you entered into an agreement -- it doesn't have to be a written agreement, but an agreement with another person or persons to commit the crimes.

Now, you mentioned another person at the company Live Well who was submitting the inflated valuations to IDC. Did you have agreement that you would be assisting with that effort?

THE DEFENDANT: Yes, your Honor.

THE COURT: And did you know that one of the purposes of this agreement and your efforts with respect to the -- under the agreement was to commit securities fraud and wire fraud?

THE DEFENDANT: Yes, your Honor.

THE COURT: I mean, did you understand that the purpose of it was to commit an illegal act?

THE DEFENDANT: I understood that it was wrong and Live Well was borrowing more money than -- accessing more money than they should have.

THE COURT: And did you in fact commit at least one -- did you commit at least one act, or do something to further this conspiracy, this effort to inflate -- to send in these

Xj8rdstup

SEALED - DO NOT DOCKET

inflated valuations and commit these crimes?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you understand that investors were being misled by this conduct?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you understand that this conduct was resulting in the company obtaining certain benefits that it otherwise would not have received?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And in connection with this conduct, did you use computers, electronic devices to relay information or misinformation about the pricing?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  The valuation?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you know that some of the monies that were deposited in connection with this scheme were deposited in a bank or institution that was insured by the Federal Deposit Insurance Corporation?

MR. HARTMAN:  Your Honor, if I can just clarify the question there?

One of the victims of the fraud was an FDIC-insured bank, so the money was coming from the FDIC-insured bank to Live Well.

THE COURT:  I see.  OK.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Xj8rdstup
SEALED - DO NOT DOCKET

Did you understand that that bank victim was insured by the FDIC?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Stern, do you believe there is a sufficient factual predicate for the plea as to all five counts?

MR. STERN: I do, your Honor.

THE COURT: Are there additional questions that you would like me to ask Mr. Stumberger about these crimes?

MR. STERN: Not at this time, your Honor.

THE COURT: Are you away of any defenses that would prevail at trial or other reason why your client should not be permitted to plead guilty at this time?

MR. STERN: I am not, your Honor.

THE COURT: OK. Mr. Hartman, are there other factual questions that you would like me to ask Mr. Stumberger?

MR. HARTMAN: Yes, your Honor. There are just two minor technical questions.

One is I know the Court asked Mr. Stumberger to confirm that he understood computers were being used as part of this scheme. I think he could confirm this, based on prior conversations with him, that those computers transmitted information in furtherance of the scheme across state lines and passed through Manhattan, and similarly with respect to all of these counts, that there was conduct that took place in

Xj8rdstup
SEALED - DO NOT DOCKET

Manhattan as part of the scheme.

THE COURT:  OK.  Mr. Stumberger, when you were engaging in this activity and using the computers to transmit information, did you understand that information would be transmitted across state lines and pass through New York City?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did some of the conduct in question occur in Manhattan, and that could include just monies passing through accounts in Manhattan?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Did you understand that it was passing through banks or financial institutions in Manhattan?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Does the government believe that there is now a sufficient factual predicate for a guilty plea?

MR. HARTMAN:  Yes, your Honor.  Thank you.

THE COURT:  OK.  Does the government represent that it has sufficient evidence to establish guilt beyond a reasonable doubt if this case were to go to trial?

MR. HARTMAN:  Yes, your Honor.

THE COURT:  Would you like to make a proffer?

MR. HARTMAN:  Sure, your Honor.

Judge, if this case were to go to trial, the government would prove beyond a reasonable doubt, through, among other things, witness testimony, emails, business

Xj8rdstup

SEALED - DO NOT DOCKET

records, recorded calls and Live Well's own financial statements, that from September of 2015 to March 2019, Mr. Stumberger participated in a conspiracy with other people, including Live Well's CFO, Eric Rohr, and its CEO, Michael Hild, to mislead certain lenders regarding the value of bonds that were offered as collateral for loans to Live Well Financial. The market value of the bonds was material to the lenders. And the scheme caused them to in fact extend credit to Live Well on multiple occasions at values far more than the bonds were worth in the marketplace.

Several of the lending agreements were structured as what are called repo transactions in which the bond itself is sold to the lender with a commitment to repay, so that is a securities transaction under the law. And, additionally, at least one of the lenders was an FDIC-insured bank.

In connection with the scheme, the conspirators, including Mr. Stumberger, made multiple interstate phone calls and sent interstate emails, some of which were directed to a conspirator in the Southern District of New York.

THE COURT: Thank you.

OK. Mr. Stumberger, on the basis of your responses to my questions and my observations of your demeanor, I find that you are competent to enter a guilty plea. I'm satisfied that you understand your rights, including your right to be charged by a grand jury and to go to trial, and that you are aware of

Xj8rdstup

SEALED - DO NOT DOCKET

the consequences of your plea, including the sentence that may be imposed, and that you are voluntarily pleading guilty, and that you've admitted that you are guilty as charged in Counts One through Five of the Information.  So, for these reasons, I'm going to recommend that your plea be accepted.

And I believe that the government has made a written application to seal, is that right?

MR. HARTMAN:  Yes, your Honor, we have.

THE COURT:  All right.  I will grant that application.

MR. HARTMAN:  Thank you, Judge.

Just for the record, it is a delayed docketing request as well.

THE COURT:  And a delayed docketing request.

OK.  And I take no sentencing date has been set?

MR. HARTMAN:  Your Honor, Judge Oetken scheduled a control date of December 18, 2019, but given the posture of the case, we're not requesting that a PSR be prepared at this time.

THE COURT:  OK.  Wonderful.

And with respect to bail, detention or release, I assume the government does not have an objection to release at this time?

MR. HARTMAN:  That's correct, your Honor.  We've conferred with defense counsel, and we have a preposed bail package for the Court's consideration.

THE COURT:  OK.  Why don't you tell me what that

Case 2:19-cr-00591-MCA ECF Document 170-31, PageID.6604/24/20 06:10:63 Page 36 of 40

Xj8rdstup

SEALED - DO NOT DOCKET

proposal is?

MR. HARTMAN:  Your Honor, we're proposing that Mr. Stumberger be released on a $100,000 personal recognizance bond, signed by himself.  We're proposing his travel be restricted to the continental United States, with 48 hours notice to Pretrial if he intends to travel from his home.

Our understanding is he intends to reside in Florida, and so we propose that he be supervised by Pretrial in Florida. I'm not sure what district that is but --

THE COURT:  Where in Florida?

THE DEFENDANT:  South --

THE COURT:  Southern Florida?

THE DEFENDANT:  South Florida and the west coast, Bradenton area.

MR. STERN:  Do you know what district that is?

THE COURT:  The Southern District?

MR. STERN:  The Southern District of Florida is -- you know, Bradenton is on the west coast, the Western District of Florida, or the Middle District, actually.

MR. HARTMAN:  I think the Court could put in the bond "supervised by the district of residence" and then Pretrial could work that out.

MR. STERN:  Actually, your Honor, may we have one moment to confer?

THE COURT:  Yes.

Xj8rdstup

SEALED - DO NOT DOCKET

(Pause)

MR. HARTMAN:  So, Judge, just to amend what I said before, because I think Mr. Stumberger is going to be primarily residing in New Jersey.  So, we would request that he be required to give 48 hours' notice to Pretrial in the event he intends to leave the Tri-State area, and that he be supervised by his district of residence, which I think will be New Jersey. I think you can put "district of residence."

THE COURT:  OK.

MR. HARTMAN:  So, and then we're requesting that he be required to surrender his passport and that he be prohibited from making any new applications for travel documents.

THE COURT:  And is Mr. Stumberger working at this time?  Are you working at this time?

THE DEFENDANT:  I'm unemployed but trying to get a business going, but unemployed.

THE COURT:  OK.  I will accept the proposed bail package.

Mr. Stumberger, you will be released today subject to a $100,000 personal recognizance bond.  You will surrender all travel documents and make no new applications.  Your travel is going to be restricted to the continental U.S., and you need to -- you will be supervised by Pretrial Services in your place -- in your district of residence.  I understand that you are going to be living primarily in New Jersey.  You need to

Xj8rdstup

SEALED - DO NOT DOCKET

give at least 48 hours' notice to Pretrial Services if you are leaving the Tri-State area or changing your residence.

(Pause)

MR. HARTMAN: Your Honor, I was just conferring with the Pretrial Services Officer. They ask that the bail order be clear that the Pretrial Services supervision should be at the level directed by Pretrial Services.

THE COURT: Yes.

MR. HARTMAN: I think I said regular, but I know they vary that sometimes.

THE COURT: Yes. I know that.

MR. HARTMAN: So they want the discretion, understandably, to do that.

THE COURT: Actually, that's what I had marked here. It will be Pretrial Services' supervision as directed by Pretrial Services.

MR. HARTMAN: Thank you, Judge.

And then the other thing is in light of Mr. Stumberger's mental health issues, Pretrial has requested a mental health evaluation and treatment as directed by Pretrial supervision.

THE COURT: Mr. Stern, do you have any objection to that?

MR. STERN: No objection, your Honor.

THE COURT: OK. I will add that condition. It may be

Xj8rdstup

SEALED - DO NOT DOCKET

that it is appropriate after evaluation that Mr. Stumberger just continue with his current provider.

MR. HARTMAN: Judge, one more thing.

Because Mr. Stumberger was interviewed by phone, he did not submit to urinalysis, and so Pretrial is requesting that he submit to a urinalysis, and if he tests positive, that he be subject to drug testing and treatment at the direction of Pretrial. I think that is unlikely, actually, but they are requesting it, that he be directed to submit to a urinalysis.

THE COURT: I don't think that is necessary for this situation so I am not going to require that.

And you said that Judge Oetken set a control date of December 17?

MR. HARTMAN: December 18th, your Honor.

THE COURT: 18th.

All right. Mr. Stumberger, it is important that you comply with the conditions of your release. If you do not, they can be revoked and you can be sent to prison, you can be charged with a separate crime of bail-jumping, and be subject to a fine. Also, if you commit a new crime while you are out on release, you can be charged with additional imprisonment for such crimes, up to ten years if the crime is a felony, and up to one year if it is a misdemeanor, and that would be charged -- that would be served after any other prison sentence is served. So, it is quite serious if you don't comply with

Xj8rdstup

SEALED - DO NOT DOCKET

the conditions of bail.

And, also, it goes without saying that you should not engage in any intimidation of any witnesses, potential witness, jurors, Court officers, or engage in any conduct that would obstruct the governmental investigation.

Is there anything further from the government?

MR. HARTMAN:  Nothing for us, your Honor.  Thank you.

THE COURT:  Anything further, Mr. Stern?

MR. STERN:  Nothing from us, your Honor.

THE COURT:  OK.  We are adjourned then.

MR. HARTMAN:  Thank you, Judge.

MR. STERN:  Thank you, your Honor.

MR. HARTMAN:  And, your Honor, thank you for accommodating our schedules.

THE COURT:  No problem.

(Adjourned)